**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――

C.K. LEE,
*on behalf of himself and others similarly situated*,

        Plaintiff,

        v.

MONDELEZ INTERNATIONAL, INC. and
MONDELEZ GLOBAL, LLC

        Defendant.

―――――――――――――――――――――――

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff C.K. LEE (herein "Plaintiff LEE" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, files this Class Action Complaint against Defendants MONDELEZ INTERNATIONAL, INC. and MONDELEZ GLOBAL, LLC (collectively, "Defendants" or "MONDELEZ") and alleges the following:

### <u>NATURE OF THE ACTION</u>

    1.    This is a consumer protection action seeking redress for, and a stop to, Defendants' unfair and deceptive practice of advertising and marketing its Green & Black's Organic Dark Chocolate products and its Green & Black's Pure Dark Chocolate products ("the Products" or, individually, "the Product"). Different variants of the Products advertise different levels of cacao

content on their front labels, including 60%, 70% and 85%. However, the back labels uniformly reveal that the principal chocolate ingredient is not <u>cacao</u> but <u>cocoa</u>, which, as detailed below, is an inferior, highly processed derivative of the cacao bean that has been stripped of the nutritional qualities that make dark chocolate appealing to its consumers.

2.      Plaintiff and Class members viewed Defendants' misleading label, and reasonably relied in substantial part on the representation that they contain cacao when deciding to purchase the Products. Plaintiff and Class members were thereby deceived into purchasing an inferior product at a price they would not have been prepared to pay had they known the truth.

3.      Plaintiff brings this proposed consumer class action on behalf of himself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale.

4.      Defendants' labeling of the Products violates the consumer protection laws of New York state as well as those of the other forty-nine states and the District of Columbia:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*

24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*

33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

43) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

44) Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

45) Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

47) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member

of the putative class is a citizen of a different state than any defendant and the amount in

controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C.

§ 1332(d)(2).

6.      This court has personal jurisdiction over Defendants because their Products are

advertised, marketed, distributed, and sold throughout New York State. Defendants engage in the

wrongdoing alleged in this Complaint throughout the United States, including New York State.

Defendants are authorized to do business in New York State, and Defendants have sufficient

minimum contacts with New York and/or otherwise has intentionally availed themselves of the

markets in New York State, rendering the exercise of jurisdiction by the Court permissible under

traditional notions of fair play and substantial justice. Moreover, Defendants engage in substantial

and not isolated activity within New York State.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a

substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

*Plaintiff*

8.      Plaintiff LEE is, and at all times relevant hereto has been, a citizen of New York

and a resident of New York County.

9.      Plaintiff LEE is a lover of dark chocolate who has been purchasing the Products for years, both for their taste and for the health benefits associated with dark chocolate. His most recent purchase was on November 21, 2021, when he purchased the "Dark 70%" variant of Green & Black's Organic Dark Chocolate at a Westside Market store located at 170 West 23rd St., New York, NY 10011 for $4.49. Up until this point, Plaintiff LEE took the Products' front labels at face value and imagined he was purchasing chocolate that consisted of 60%, 70%, or 85% cacao, as stated there. But after his most recent purchase, Plaintiff LEE examined the ingredients statement and observed that it listed not <u>cacao</u> but rather <u>cocoa</u>, which is an inferior, highly processed derivative of the cacao bean that has been stripped of the nutritional qualities that are originally found in that bean.

10.      As a result of Defendants' deceptive conduct as alleged herein, Plaintiff LEE was injured when he paid money for a Product that did not deliver the qualities it promised and misled him as to its contents. Plaintiff LEE would not have been willing to pay the sum he paid had he known the Product was mislabeled. Defendants delivered a Product with significantly less value than was warranted by their representations, thereby depriving Plaintiff LEE of the benefit of his bargain and injuring him in an amount up to the purchase price. Damages can be calculated through expert testimony at trial. Further, should Plaintiff LEE encounter the Products in the future, he could not rely on the truthfulness of the packaging without corrective changes to it.

*Defendant*

11.      Defendant MONDELEZ INTERNATIONAL, INC. is a corporation that specializes in the manufacturing of candy and chocolate and is organized under the laws of

Virginia, with a headquarters at 905 West Fulton Market, Chicago, IL 60607 and an address for service of process at CT Corporation System, 28 Liberty Street, New York, NY 10005.

12.     Defendant MONDELEZ GLOBAL, LLC is a subsidiary of MONDELEZ INTERNATIONAL, INC. and the Products' distributor. It is organized under the laws of Delaware, with a headquarters at 100 Deforest Avenue, East Hanover, NJ 07936 and an address for service of process at 28 Liberty Street, New York, NY 10005.

13.     Defendants manufactured, packaged, distributed, advertised, marketed and sold the Products to thousands of customers nationwide but online and in brick-and-mortar stores.

## FACTUAL ALLEGATIONS

14.     Defendants advertise the Products as containing a substantial amount of cacao. Here, for example, is the font label of the Product purchased by Plaintiff, where it is claimed that the Product consists of 70% cacao:



15.     However, the ingredients list reveals that the chocolate ingredient is not cacao but

cocoa:



16.     There is not mention of cacao butter, but only of cocoa butter.

17.     The same misrepresentation is at play in other variants of Defendant's Products.

Below is the front label for the 85% Dark Chocolate variant:



18.     However, the ingredient statement on the back label once again reveals that the Product contains no cacao at all, but rather <u>cocoa</u>:



19.     While cacao and cocoa may sound similar, they are in fact very different.

*Allrecipes.com* expalins:

> If you've ever spent a minute or two browsing the candy aisle at the grocery store (guilty) then you've probably noticed the terms "cocoa" and "cacao" floating around on different chocolate bar labels with varying percentages. Besides a few vowels, is there any difference between these two terms? Turns out there's quite a few differences between the two, but there's one thing they have in common: chocolate. To learn the difference between cocoa and cacao powder, you first need to look at how they're processed.
>
> …………………………..
>
> So, cacao powder is made from fermented beans that have not been roasted. They are processed at low temperatures and then milled into a powder. The result is a powder that's bitter in taste and higher in nutritional content. Cocoa powder on the other hand is made from beans that are both fermented and roasted, and then processed at a much higher temperature. The result is a less bitter, slightly darker powder that has lost some of its nutritional value.
>
> …………………………..
>
> Cacao products are rich in disease-fighting plant compounds including flavanols, which have antioxidant, heart-protective, and anti-cancer properties. It's also a good source of iron, fiber, and magnesium. However, these benefits can be lost during processing. Choosing products that are unsweetened, like cacao nibs, can help you to minimize the calorie and sugar-intake that comes with more processed products.[1]

20.     *Navitas Organics*, a purveyor of superfoods, including cacao powder, confirms the same:

> In their purest forms, both cacao powder and unsweetened cocoa powder taste similar: like unsweetened chocolate. Their health benefits are where the biggest variances occur. Minimally processed cacao powder is an abundant source of minerals (iron, magnesium and potassium), fiber and those unique antioxidants called flavanols, which support cardiovascular and brain health. After cacao has been heated at high temperatures, many of these beneficial nutrients degrade and are no longer significantly present in the powder—quite the unnecessary loss in nutrition.[2]

---

[1] https://www.allrecipes.com/article/difference-between-cocoa-and-cacao/
[2] https://navitasorganics.com/blogs/navitaslife/whats-the-difference-between-cocoa-and-cacao

21.     Another superfood vendor, *Creative Nature*, agrees:

'Cacao' refers to any of the food products derived from the cacao bean that have remained 'raw'. These products include cacao nibs, cacao butter, cacao mass or paste, but most commonly cacao powder. Raw cacao powder is made by cold-pressing unroasted cocoa beans, this process retains the living enzymes and removes the fat (cacao butter).

'Cocoa' looks the same however there is a big difference. Cocoa powder is the 'raw cacao' that's been roasted at high temperatures. The effect of roasting the cacao is the molecular structure of the cocoa bean changes, lowering the overall nutritional value and destroying the health benefits.

There are many studies that boast of chocolate's amazing health benefits, however these sadly aren't referring to your average, store-bought chocolate bar. The 'chocolate' that they're referring to is much closer to cacao, and also includes dark chocolate.

So, what are the health benefits of cacao I hear you ask? Cacao powder is known to have a higher antioxidant content than cocoa, and cacao is the purest form of chocolate you can consume, which means it is raw and much less processed than cocoa powder or chocolate bars. Cacao is thought to be the highest source of antioxidants of all foods and the highest source of magnesium of all foods.[3]

22.     Scientific websites like *webmd* confirm that roasting removes much of cacao's nutritional content: "The chocolate-making process removes a lot of the antioxidants in raw cacao (almost 60%). However, if you'd still prefer to eat raw cacao in the form of chocolate, you can still get many of the nutrients by eating very dark chocolate (60% to 70% cacao)."[4]

23.     By contrast with Defendants, other chocolate manufacturers are honest with consumers that they are merely purchasing cocoa and not cacao.  The front and back labels of Beyond Good dark chocolate are perfectly consistent.  Like the Products, Beyond Good consists of cocoa rather than cacao. But unlike the Products, Beyond Good makes this known to consumers on the front label:

---

[3] https://www.creativenaturesuperfoods.co.uk/cacao-vs-cocoa-whats-the-difference/
[4] https://www.webmd.com/diet/health-benefits-cacao#2





24.     Defendants' misleading packaging practices were material to, and were relied upon by, Plaintiff and the Class. These practices would also be material to, and be relied upon by, a reasonable consumer, since reasonable consumers are attracted to dark chocolate for the health benefits they associate with it, which are greatly reduced or eliminated once raw cacao is roasted and processed at high temperatures so as to become cocoa.

25.     In announcing that the Product is made from "the finest Trinitario cacao beans," the front label of the Products communicates to reasonable consumers that the Products retain the

nutritional qualities found in cacao beans, when in fact those qualities were lost when the cacao beans were processed into cocoa.

26.     Plaintiff and the Class did not know, and had no reason to know, that the Products contained cocoa rather than cacao. While the ingredients statement on the Products' back label discloses the truth about their contents, the front-label unambiguously represents that the chocolate consists in cacao, so reasonable consumers are given no reason to suspect that this is contradicted by representations on the back label.

27.     Plaintiff and Class members would not have purchased the Product at the given price had they known that it consisted of cocoa rather than cacao. Because they did not know, they were induced to purchase a product inferior to what had been represented to them. They were therefore deprived of the benefit of their bargains, injured in an amount up to the purchase price, to be determined by expert testimony at trial.

## **CLASS ACTION ALLEGATIONS**

28.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

29.     In the alternative, Plaintiff seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

30.     The proposed Classes exclude current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants,

Defendants' legal representatives, heirs, successors, assigns, any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

31.     Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

32.     This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

33.     Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

      i.   Whether Defendants labeled, packaged, marketed, advertised and/or sold the Products to Plaintiff and Class members, using false, misleading and/or deceptive packaging and labeling;

     ii.   Whether Defendants' actions constitute violations of the consumer protection laws of New York and the other states;

    iii.   Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, marketing, advertising and/or sale of Products;

    iv.   Whether Defendants' labeling, packaging, marketing, advertising and/or selling of the Products constitutes unfair, unlawful or fraudulent practices;

     v.   Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future;

vi.   Whether Class members have sustained damages as a result of Defendants'
      wrongful conduct;

vii.  The appropriate measure of damages and/or other relief; and

34.     Plaintiff's claims are typical of those of the Class members because Plaintiff and
the other Class members sustained damages arising out of the same wrongful conduct, as detailed
herein. Plaintiff and Class members purchased Defendants' Products and sustained similar injuries
arising out of Defendants deceptive labeling, which remained the same regardless of where it was
viewed. Plaintiff's claims arise from the same practices and course of conduct that give rise to the
claims of Class members and are based on the same legal theories.

35.     Plaintiff will fairly and adequately represent and pursue the interests of Class
members. Plaintiff understands the nature of his claims herein, has no disqualifying conditions,
and will vigorously represent the interests of Class members. Neither Plaintiff nor Plaintiff's
counsel have any interests that conflict with, or are antagonistic to, the interests of Class members.

36.     Plaintiff has retained highly competent and experienced class action attorneys to
represent his interests and those of Class members. Plaintiff and Plaintiff's counsel have the
necessary financial resources to adequately and vigorously litigate this class action. Plaintiff and
counsel are aware of their fiduciary responsibilities to Class members and will diligently discharge
those duties by vigorously seeking the maximum possible recovery for them.

37.     A class action is superior to other available methods for the fair and efficient
adjudication of this controversy. The damages suffered by any individual Class member are too
small to make it economically feasible for an individual Class member to prosecute a separate
action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this
forum. Furthermore, the adjudication of this controversy through a class action will avoid the

potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

38.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds that are generally applicable to all Class members, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

39.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

40.     The prosecution of separate actions by all Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.

41.     Defendants' conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. Defendants' systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.


## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought individually and on behalf of the Nationwide Class in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia or, alternatively, on behalf of the New York Class)**

42.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

43.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

44.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." (internal citations omitted)).

45.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful acts and practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated the law. The court may award reasonable attorney's fees to a prevailing plaintiff.

46.     The practices employed by Defendants, whereby they advertise, promote, and market their Products as consisting of cacao are unfair, deceptive, misleading, and in violation of the NY GBL § 349. These practices are directed at consumers.

47.     Defendants' conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.  Given that the back label of the Products accurately describe them as containing cocoa rather than cacao, Defendants were perfectly aware that their front-label representations stating the opposite were false and misleading.

48.     Defendants' actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing the Products as a result of and Defendants' generalized course of deception.

49.     Defendants' deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

50.     Furthermore, Defendants should be enjoined from representing the Products as containing cacao on their front labels.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (FALSE ADVERTISING LAW)

**(brought individually and on behalf of the Nationwide Class in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia or, alternatively, on behalf of the New York Class)**

51.     Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

52.     Defendants have been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

53.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account the

extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

54. Defendants caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

55. Defendants' front-label misrepresentations are substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendants' material deceptions regardless of where or how they purchase the Products.

56. Defendants have violated N.Y. Gen. Bus. Law § 350 because its labeling of Products as containing cacao is likely to deceive a reasonable consumer.

57. Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising.

58. Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT III**

**COMMON LAW FRAUD**

**(brought on behalf of the Nationwide Class in conjunction with the substantively similar common law of other states and the District of Columbia or, alternatively on behalf of the New York Class under New York common law)**

59. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

60.     Defendants intentionally makes materially false and misleading representations regarding the nature of the Products.

61.     Plaintiff and Class members reasonably relied on Defendants' false and misleading representations. They did not know, and had no reason to know, that the Products are made with cocoa rather than cacao.  They would not have purchased the Products at the given price had they known the truth.

62.     Defendants knew and intended that Plaintiff and the Class members would rely on their misrepresentations that their dark chocolate consisted of cacao.

63.     Plaintiff and Class members have been injured as a result of Defendants' fraudulent conduct.

64.     Defendants are liable to Plaintiff and Class members for damages sustained as a result of Defendants' fraud.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

  a.   An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

  b.   An Order appointing the undersigned attorney as Class Counsel in this action;

  c.   Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

  d.   All recoverable compensatory and other damages sustained by Plaintiff and Class members;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendants to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendants to engage in a corrective advertising campaign; and (iii) requiring Defendants to reimburse Plaintiff and all Class members, up to the amounts paid for the Products;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: February 9, 2022

Respectfully submitted,

By: _____*/s/ Rony Guldmann*_____
     Rony Guldmann, Esq.

**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com

*Attorneys for Plaintiff and the Class*