**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| C.K. LEE,<br>on behalf of himself and others similarly situated,<br><br>                             Plaintiffs,<br><br>    vs.<br><br>MONDELĒZ INTERNATIONAL, INC. and<br>MONDELĒZ GLOBAL, LLC,<br><br>                         Defendants. | Civil Action No.  1:22-cv-01127-LJL<br><br>District Judge Lewis J. Liman<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND FACTS ................................................................................... 3

III.  LEGAL STANDARD ........................................................................................ 4

     A.    Failure To State A Claim Under Rule 12(b)(6) ...................................... 4

     B.    Motion To Strike Class Allegations ....................................................... 5

     C.    Personal Jurisdiction .............................................................................. 6

IV.  DISCUSSION .................................................................................................... 6

     A.    Plaintiff's State Law Claims Are Expressly Preempted ........................ 6

     B.    Plaintiff Fails To State A Claim Under Rule 12(b)(6).......................... 9

           1.    The Deceptive Practices/False Advertising Claims must be
                 Dismissed ................................................................................... 9

           2.    Plaintiff's Fraud Claim must be Dismissed ............................... 15

     C.    The Court Can Strike Plaintiff's Class Allegations Now ..................... 17

     D.    Plaintiff Lacks Standing To Seek Injunctive Relief ............................. 20

     E.    There Is No Jurisdiction Over MDLZ For Non-New York Class Members ....... 22

     F.    The Court Should Not Afford Leave To Amend ................................... 24

V.   CONCLUSION................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*,
  275 F.Supp.3d 910 (N.D. Ill. 2017) ...................................................................19

*Ackerman v. Coca-Cola Co.*,
  No. 09 CV 395 (DLI)(RML), 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .........................18

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-md-2481 (KBF), 2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014), *aff'd*,
  833 F.3d 151 (2d Cir. 2016) ...............................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................4

*ASTI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ................................................................................16

*Atik v. Welch Foods, Inc.*,
  No. 15-CV-5405 (MKB)(VMS), 2016 WL 5678474 (E.D.N.Y. Sept. 30,
  2016) ...............................................................................................................20

*Barreto v. Westbrae Nat., Inc.*,
  518 F.Supp.3d 795 (S.D.N.Y. 2021) ...................................................................10

*Beers v. Mars Wrigley Confectionery US, LLC*,
  Case No. 21-CV-2 (CS), 2022 WL 493555 (S.D.N.Y. Feb. 17, 2022) .............................14, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................4

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020) ...............................................................................20

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S.Ct. 1773 (2017) ..................................................................................23, 24

*Brod v. Sioux Honey Ass'n Coop.*,
  609 Fed. App'x 415 (9th Cir. 2015) ......................................................................8

*Budhani v. Monster Energy Co.*,
  *527 F.Supp.3d 667 (S.D.N.Y. 2021) (citation omitted)* ...........................................10

*Campbell v. Freshbev LLC*,
  322 F.Supp.3d 330 (E.D.N.Y. 2018) ...................................................................13

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ............................................................6

*Chizniak v. CertainTeed Corp.*,
    No. 1:17-CV-1075, 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020) ...........................................24

*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992)............................................................................6, 7

*Claridge v. N. Am. Power & Gas, LLC*,
    No. 15-cv-1261 (PKC), 2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015)...................................22

*Colpitts v. Blue Diamond Growers*,
    *527 F.Supp.3d 562 (S.D.N.Y. 2021)*........................................................16

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)............................................................................5

*Cosgrove v. Blue Diamond Growers*,
    No. 19 Civ. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ..................................13

*Cosgrove v. Or. Chai, Inc.*,
    520 F.Supp.3d 562 (S.D.N.Y. 2021)..........................................................10, 15, 21

*CSX Transp. Inc. v. Easterwood*,
    507 U.S. 658 (1993)............................................................................6

*Daimler AG v. Bauman*,
    134 S.Ct. 746 (2014)............................................................................22

*Dashnau v.Unilever Mfg. (US), Inc.*,
    529 F.Supp.3d 235 (S.D.N.Y. 2021)..........................................................11

*Davis v. Hain Celestial Grp.*,
    297 F.Supp.3d 327 (E.D.N.Y. 2018) ......................................................11, 13, 20

*In re Dental Supplies Antitrust Litig.*,
    No. 16 Civ. 696 (BMC)(GRB), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ...................22

*Dorcester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)....................................................................6

*Duran v. Henkel of Am., Inc.*,
    450 F.Supp.3d 337 (S.D.N.Y. 2020)..........................................................5

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-CV-2484(JS)(AKT), 2015 WL 2344134 (E.D.N.Y. May 14, 2015).........................21

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
    783 F.3d 395 (2d Cir. 2015)............................................................................16

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)............................................................................10

*Gazzillo v. Ply Gem. Indus.*,
    No. 1:17-CV-1077, 2018 WL 5253050 (N.D.N.Y. Oct. 22, 2018) ........................................24

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982).....................................................................................5

*Girl Scouts of the U.S. v. Steir*,
    102 Fed. App'x 217 (2d Cir. 2004)...................................................................6

*Gordon v. Target Corp.*,
    No. 20-CV-9589 (KMK), 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ....................14, 16, 21

*Greene v. Gerber Prods. Co.*,
    262 F.Supp.3d 38 (E.D.N.Y. 2017) ...................................................................16

*Harris v. Mondelēz Global LLC*,
    No. 19-cv-2249 (ERK) (RER), 2020 WL 4336390 (E.D.N.Y. July 28, 2020) ......................13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)....................................................................................23

*Hu v. City of N.Y.*,
    927 F.3d 81 (2d Cir. 2019)..............................................................................4

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).....................................................................................6

*Kennedy v. Mondelēz Global LLC*,
    19-CV-302-ENV-SJB, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ............................21, 24

*Manchouck v. Mondelēz Int'l Inc.*,
    No. 13-2148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ...............................13

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018)...........................................................................14

*Mayfield v. Asta Funding, Inc.*,
    95 F.Supp.3d 685 (S.D.N.Y. 2015) ...................................................................5

*Melendez v. One Brands, LLC*,
    No. 18-CV-06650 (CBA) (SJB), 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020).............11, 24

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84F.3d 560, 566 (2d Cir. 1996)........................................................................6

*Mills v. Giant of Md., LLC*,
    441 F.Supp.2d 104 (D.D.C. 2006), *aff'd*, 508 F.3d 11 (D.C. Cir. 2007)...................9

*Moore v. Trader Joe's Co.*,
    No. 4:18-cv-04418-KAW, 2019 WL 2579219 (N.D. Cal. June 24, 2019)..............9

*Morales v. N.Y. City. Dep't of Educ.*,
    808 Fed. App'x 35 (2d Cir. 2020)....................................................................24

*Nemphos v. Nestle Waters N. Am., Inc.*,
    775 F.3d 616 (4th Cir. 2015) ...........................................................................8

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016).............................................................................20

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)........................................................................10, 11

*Oscar v. BMW of N. Am., LLC*,
    No. 09 Civ. 11(PAE), 2012 WL 2359964 (S.D.N.Y. June 19, 2012)...................18

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014).............................................................................5

*In re Pepsico Inc.*,
    588 F.Supp.2d 527 (S.D.N.Y. 2008).................................................................8

*Pichardo v. Only What You Need, Inc.*,
    No. 20-CV-493 (VEC), 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ..................10

*Puri v. Costco Wholesale Corp.*,
    No. 5:21-cv-01202-EJD, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) .....................9, 14, 15

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
    No. 18-CV-2250 (NGG) (RML), 2019 WL 3409883 (E.D.N.Y. July 26, 2019) ...................15

*Riegel v. Medtronic*,
    552 U.S. 312 (2008)........................................................................................7

*Ruotolo v. City of N.Y.*,
    514 F.3d 184 (2d Cir. 2008).............................................................................24

*Sarr v. BEF Foods, Inc.*,
    2020 WL 729883 (E.D.N.Y. Feb 13, 2020).......................................................15

*Solak v. Hain Celestial Grp., Inc.*,
   No. 3:17-CV-0704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2017)........................................11

*Stadnick v. Lima*,
   *861 F.3d 31 (2d Cir. 2017)* ........................................................................................4

*Spratley v. FCA US LLC*,
   No. 3:17-CV-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017).......................................24

*Weiner v. Snapple Beverage Corp.*,
   No. 07 Civ. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)................................18

*Weinstein v. eBay, Inc.*,
   819 F.Supp.2d 219 (S.D.N.Y. 2011)..................................................................................10

*Wenokur v. AXA Equitable Life Ins. Co.*,
   No. CV-17-00165-PHX-DLR, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017) .........................23

*Wynn v. Topco Assocs., LLC*,
   No. 19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ...........................11, 17

*Yee Ting Lau v. Pret A Manger (USA) Ltd.*,
   No. 17-cv-5775 (LAK), 2018 WL 4682014 (S.D.N.Y. Sept. 28, 2018) ...............................20

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
   No. 20 Civ. 8512 (ER), 2022 WL 799563 (S.D.N.Y. Mar. 15, 2022)..................14, 15, 17, 21

**Statutes / Other Autorities**

21 C.F.R. §§ 100-190.6....................................................................................................................7

21 C.F.R. § 100.1(c)(4) ...................................................................................................................7

21 C.F.R. §§ 130 to 169 ..................................................................................................................7

21 C.F.R. § 163, *et seq.*..............................................................................................................7, 8

21 C.F.R. § 163.123 ......................................................................................................................7, 8

21 U.S.C. § 341 ................................................................................................................................7

21 U.S.C. § 343-1(a) ........................................................................................................................7

21 U.S.C. § 343(g) ...........................................................................................................................7

Federal Food, Drug and Cosmetic Act  ................................................................................ *passim*

Fed. R. Civil P. 9(b)........................................................................................................................16

Fed. R. Civil P. 12 ............................................................................................................. *passim*

Fed. R. Civil P. 23 ............................................................................................................. 5

N.Y. Gen. Bus. Law § 349 ................................................................................................ *passim*

N.Y. Gen. Bus. Law § 350 ................................................................................................ *passim*

Nutrition Labeling and Education Act ............................................................................... 6

## I.      INTRODUCTION

Plaintiff claims that Green & Black's organic dark chocolate products sold by the defendants ("MDLZ") are misbranded because the labels state that they are made with cacao but they list cocoa as an ingredient and not cacao.  This theory of liability betrays a significant and fundamental misunderstanding of chocolate processing:  If the plaintiff's counsel had done their diligence, they would know that ***cocoa is made with cacao*** (meaning that the labels are accurate) and that ***the FDA standard of identity applicable to chocolate*** specifies that products made with cacao ***should not list "cacao" as an ingredient,*** except under specified circumstances that do not apply here.  Because the chocolate products at issue here are labeled consistently with FDA requirements, the plaintiff's complaint must be dismissed as a matter of law.

Equally problematically for the plaintiff, the complaint filed in this action fails to identify any misrepresentation that MDLZ supposedly made and does not actually allege that the products contain no cacao.  In fact, ***the complaint alleges that the plaintiff (1) learned of the presence of cocoa in the products from reading the product labels and (2) admits that the cocoa listed on the ingredient statement is made from cacao***.  (*See* Compl. ¶¶1, 9, 24-25.)  For example, the complaint shows that the product labels truthfully state that the products were "made with . . . cacao" and the ingredient statements list cocoa as an ingredient.  (*See* Compl. at ¶¶14-18.)  Thus, the plaintiff's allegations -- and the images of the product labels on which his claims are based -- demonstrate that MDLZ accurately disclosed the ingredients of the products such that no reasonable consumer could be deceived.

While the plaintiff claims that he was deceived into paying more for the products because he believed that they had certain nutritional benefits that they did not have, this theory requires impermissibly reading into the labels statements that were not made.  Nothing on the product

labels about which the plaintiff complains supports the plaintiff's theory that MDLZ claimed that the cacao in the products offered specific nutritional benefits or was "unprocessed" or "raw." In fact, one can simply read the labels and see that they make no representation about processing of cacao beans, do not state that the products are comprised exclusively of cacao and no cocoa and do not claim any particular nutritional benefit. Instead, the labels simply and clearly state that the products are made with cacao. The fact that cocoa or cocoa butter is included in the ingredient list does not make misleading the representations on the front of the labels that the products are made with cacao. Cocoa is a cacao product. Moreover, the product ingredients are clearly listed on the information panel on the labels. Accordingly, the plaintiff cannot allege that he did not get the benefit of his bargain in buying the products because he admits he received a dark chocolate product made with cacao, consistently with the express disclosures on the packaging and the expectations of a reasonable consumer. Under such circumstances, the complaint must be dismissed without leave to amend.

Even if any of the plaintiff's claims could proceed past the pleadings stage (they cannot), the complaint reveals that individualized issues of proof would predominate such that class treatment in this case would necessarily be inappropriate. In fact, the claims pled here demonstrate that separate issues of reliance and damages *would have to be adjudicated as to each putative class member*, meaning that class treatment would not be a superior means of resolving the dispute. It is also clear from the complaint that the Court lacks personal jurisdiction over MDLZ with respect to the claims of non-New York putative class members. Thus, if the Court does not dismiss the plaintiff's claims outright and with prejudice, the Court should at the very least strike the class allegations and/or dismiss the claims of non-New York putative class members for lack of personal jurisdiction.

## II.     BACKGROUND FACTS

MDLZ manufactures Green & Black's dark chocolate products.  (Compl. at ¶13.)
Various products are labeled to correspond to the cacao percentage and flavor intensity of the
chocolate they contain, including 60%, 70% and 85% cacao.  (Compl. at ¶1.)  Plaintiff does not
challenge the accuracy of the percentages on the product labels.  (*See generally* Compl.)

Plaintiff alleges he is "a lover of dark chocolate who has been purchasing the Products
for years, both for their taste and for the health benefits associated with dark chocolate."
(Compl. at ¶9.)  Before supposedly purchasing a "Dark 70%" product on November 21, 2021,
the plaintiff allegedly "took the Products' front labels at face value and ***imagined*** he was
purchasing chocolate that consisted of 60%, 70%, or 85% cacao."  (*Id.* (emphasis added).)  After
the November 2021 purchase, the plaintiff "examined the ingredients statement and observed
that it listed not ***cacao*** but rather ***cocoa***," which he claims "is an inferior, highly processed
derivative of the cacao bean that has been stripped of the nutritional qualities that are originally
found in that bean" and "that make dark chocolate appealing to its consumers."  (Compl. at ¶¶1,
9.)[1]  Plaintiff contends that, "[i]n announcing that the Product is made from 'the finest Trinitario
cacao beans,' the front label of the Products communicates to reasonable consumers that the
Products retain the nutritional qualities found in cacao beans, when in fact those qualities were
lost when the cacao beans were processed into cocoa."  (Compl. at ¶25.)  Interestingly, the
plaintiff admits that "raw cacao is roasted and processed at high temperatures so as to become
cocoa."  (Compl. at ¶24.)  Plaintiff claims that he "would not have been willing to pay the sum
he paid had he known the Product was mislabeled."  (Compl. at ¶10.)

---

[1] The complaint purports to cite information found on certain websites.  (*See, e.g.* Compl. at ¶20 ("After cacao has
been heated at high temperatures, many of these beneficial nutrients degrade and are no longer significantly present
in the powder"); *id.* at ¶21 ("Cocoa powder is the 'raw cacao' that's been roasted at high temperatures").)

### III.   LEGAL STANDARD

#### A.   Failure To State A Claim Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning its factual allegations allow a court to reasonably infer liability based on the alleged conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

In evaluating a Rule 12 motion, the Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  The Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'"  *Stadnick v. Lima*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)); *see also Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action").

"In deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, documents attached . . . or incorporated by reference in the pleadings, and matters of which judicial notice may be taken."  *Hu v. City of N.Y.*, 927 F.3d 81, 88 (2d Cir. 2019) (citation

and quotation marks omitted).  "Dismissal is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."  *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014) (internal quotation marks omitted).

      **B.**    **Motion To Strike Class Allegations**

      The Court must conduct a "rigorous analysis" to determine whether a plaintiff can satisfy the Rule 23 requirements for class certification.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  While courts in the Second Circuit typically wait until after the pleading stage to make such determinations, there is no reason to wait where the defects are obvious and Rule 23 expressly requires that this determination be conducted "[a]t an early practicable time."  Fed. R. Civil P. 23(c)(1)(A).  Indeed, our Supreme Court has found that class certification can be denied on the pleadings because "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

      Rule 12(f) permits the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  It is proper to entertain a motion to strike class allegations "if the inquiry would not mirror the class certification inquiry and if the resolution of the motion is clear."  *Duran v. Henkel of Am., Inc.*, 450 F.Supp.3d 337, 357 (S.D.N.Y. 2020) (internal quotes and citations omitted).  Such a motion should be granted if the defendant can "demonstrate from the face of the Complaint that it would be impossible to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery."  *Mayfield v. Asta Funding, Inc.*, 95 F.Supp.3d 685, 696 (S.D.N.Y. 2015) (internal citation omitted).

### C.     Personal Jurisdiction

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  To survive a motion based on lack of personal jurisdiction, a plaintiff must make a *prima facie* factual showing that the defendant is subject to jurisdiction in the state for the specific claims asserted.  *Dorcester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  Due process requires the defendant to have minimum contacts with the state such that asserting jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  For the Court to exercise jurisdiction over a foreign defendant (1) jurisdiction must be allowed by the New York long-arm statute and (2) the long-arm statute must comport with due process.  *Girl Scouts of the U.S. v. Steir*, 102 Fed. App'x 217, 219 (2d Cir. 2004).

## IV.    DISCUSSION

### A.     Plaintiff's State Law Claims Are Expressly Preempted

Under the Supremacy Clause of Article VI of the Constitution, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).  When a federal statute contains an express preemption clause, the plain wording of the clause "necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp. Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (citations omitted).  Faced with an express preemption provision, the Court's task "is to interpret the provision and identify the domain expressly preempted by that language." *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 464 (1996)) (internal quotations omitted).

The Federal Food, Drug and Cosmetic Act (FDCA), as amended by the Nutrition

Labeling and Education Act, governs the labeling of all food products in the United States, including through standards of identity. *See* 21 U.S.C. § 341; 21 C.F.R. §§ 100-190.6. FDA standard of identity regulations specify, among other things, the types of ingredients that can be included in particular products and in the product name. *See* 21 CFR Parts 130 to 169. If FDA regulations establish a standard of identity for a category of food, (1) the food product must conform to such definition and standard and (2) its label must bear the name of the food specified in the definition and standard. 21 U.S.C. § 343(g). The FDCA defines a food as misbranded if the product "purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations." 21 U.S.C. § 343(g).

Under the FDCA, states are expressly prohibited from directly or indirectly establishing any requirement for foods subject to a standard of identity if the proposed state requirement is not identical to the standard of identity requirements prescribed by the statute. *See* 21 U.S.C. § 343-1(a); 21 C.F.R. § 100.1(c)(4). Consumer claims under state law and common law are state "requirements" subject to preemption. *See Riegel v. Medtronic*, 552 U.S. 312, 324-25 (2008); *Cipollone*, 505 U.S. at 521.

The federal requirements applicable to ***chocolate ingredient labeling*** are prescribed by FDA's standard of identity for ***cacao products*** in 21 CFR Part 163, *et seq.* These standards apply to sweet chocolate products like the products at issue in the complaint. *See* 21 CFR § 163.123. FDA has concluded that such chocolate products qualify as "cacao products" because they are made with cacao, irrespective of any processing. *See id.* The standards of identity for sweet chocolate "made with cacao" products provide that the product may be made using a specified amount of chocolate liquor, contain an optional sweetener, optional dairy ingredients and must be labeled consistently with a limited identification of prescribed food names (*e.g.*,

"bittersweet chocolate").  *Id*.  Under these federal laws, ***the only permissible use of "cacao" in a*** ***food label's ingredient list is if the product is cacao nibs***.  21 C.F.R. § 163.110 (cacao nibs may also be labeled "cocoa nibs" or "cracked cocoa").  All other chocolate products' front labels can say they are made with or contain cacao but cannot list cacao as an ingredient.  (*Id.*)

Given these rules, the plaintiffs' deceptive labeling claims here are expressly preempted because the products plainly comply with federal ingredient list requirements.  Plaintiff argues that the products are mislabeled because the ingredients list "cocoa" or "cocoa butter" but the front of the label references that the products are "made with . . . cacao."  (*See* Compl. at ¶¶ 17, 47, 55, 62.)  This theory directly contravenes FDA regulations and MDLZ's duty to comply with the statutory requirements that apply to the products, as the product labeling is consistent with FDA's regulations prescribing the ingredients and labeling requirements for sweet chocolate. One only need read the labels to see that the products are labeled in full accordance with federal food labeling laws, particularly with respect to the proper use of the term "chocolate liquor," which is made from cacao, and optional ingredients including cocoa butter, as prescribed in 21 CFR Part 163 *et seq*.

Courts in this district and across the country have confirmed that preemption bars state law claims seeking to challenge food ingredient labeling that is otherwise compliant with the FDCA and other FDA regulations regarding standards of identity.  *See, e.g.*, *Brod v. Sioux Honey Ass'n Coop.*, 609 Fed. App'x 415, 416 (9th Cir. 2015) (FDCA's labeling requirement preempts state law prohibiting de-pollinated honey from being labeled as "honey"); *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 627 (4th Cir. 2015) (FDA's standards of identity for bottled water labeling preempt state law claims for misleading marketing and failure to warn consumers about risks of dental fluorosis); *In re Pepsico Inc.*, 588 F.Supp.2d 527, 537 (S.D.N.Y. 2008)

(claims seeking additional labeling representations on bottled water subject to standard of identity were expressly preempted); *Mills v. Giant of Md., LLC*, 441 F.Supp.2d 104, 106-09 (D.D.C. 2006), *aff'd*, 508 F.3d 11 (D.C. Cir. 2007) (consumer claims for failing to attach a warning to milk were expressly preempted by the FDCA because milk is subject to FDA's standard of identity and labeling requirements); *Moore v. Trader Joe's Co.*, No. 4:18-cv-04418-KAW, 2019 WL 2579219, at *3-6 (N.D. Cal. June 24, 2019) (state law false advertising claims were preempted by the FDCA because the product label was FDA compliant).

Plaintiff here, like the plaintiffs in the above-cited cases, asks the Court to declare unlawful labeling that FDA's regulations require.  Indeed, the FDCA expressly preempts the plaintiff's argument that the Court should impose its own, new requirement that MDLZ list "cacao" as an ingredient even though FDA has clearly prescribed the current product labeling and would prohibit such changes.  *See Puri v. Costco Wholesale Corp.*, No. 5:21-cv-01202-EJD, 2021 WL 6000078, at *5 (N.D. Cal. Dec. 20, 2021) (claims seeking to require labeling chocolate products in a manner "different from or in addition to the FDCA's requirements" were preempted).  Because the product labeling here complies with FDA standard of identity requirements, the plaintiff's claims cannot be maintained as a matter of law and must be dismissed with prejudice.

## B.   Plaintiff Fails To State A Claim Under Rule 12(b)(6)

Even if the plaintiff's state law claims were not preempted (they are), they fail to state a claim under applicable law.

### 1.   The Deceptive Practices/False Advertising Claims must be Dismissed

General Business Law section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce" and section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §§349, 350.  "The standard

for recovery under General Business Law §350, while specific to false advertising, is otherwise identical to section 349." *Cosgrove v. Or. Chai, Inc.*, 520 F.Supp.3d 562, 575 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). "To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal quotes omitted) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)).

"[T]he applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled." *Weinstein v. eBay, Inc.*, 819 F.Supp.2d 219, 228 (S.D.N.Y. 2011); *see also Barreto v. Westbrae Nat., Inc.*, 518 F.Supp.3d 795, 805 (S.D.N.Y. 2021) ("the challenged act must be 'inherently deceptive'") (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017)). "[P]laintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Budhani v. Monster Energy Co.*, 527 F.Supp.3d 667, 676 (S.D.N.Y. 2021) (citation omitted). Instead, a plaintiff must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.*

In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context." *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial"). "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the

label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." *Davis v. Hain Celestial Grp.*, 297 F.Supp.3d 327, 334 (E.D.N.Y. 2018). "Such clarification can come from an area of the packaging where 'consumers are trained to look' for such information, such as the ingredients panel." *Melendez v. One Brands, LLC*, No. 18-CV-06650 (CBA) (SJB), 2020 WL 1283793, at *6 (E.D.N.Y. Mar. 16, 2020) (quoting *Davis*, 297 F.Supp.3d at 337); *see also Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, at *5 (N.D.N.Y. Apr. 17, 2017) ("any potential ambiguity . . . could be resolved by the back panel of the products, which list[s] all ingredients").

The reasonable consumer test is an objective standard resolved as a matter of law. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (the "materially misleading" prong is an objective test that is met only if "a reasonable consumer acting reasonably under the circumstances" would be misled); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F.Supp.3d 235, 241 (S.D.N.Y. 2021) ("it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer").

Plaintiff complains that MDLZ misrepresents the contents of the products because the products' front labels list them as containing a "substantial amount of cacao" -- 60%, 70% or 85% -- while "the ingredient list reveals that the chocolate ingredient is not cacao but cocoa." (Compl. at ¶¶ 14-18; *see also id.* at ¶56 ("[MDLZ's] labeling of Products as containing cacao is likely to deceive a reasonable consumer"); *see also id.* at ¶46 (alleging that MDLZ improperly "advertise[s], promote[s], and market[s] [the] Products as consisting of cacao").) However, the complaint demonstrates that the product labels are accurate and no reasonable consumer could be deceived. *See Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3

(S.D.N.Y. Jan. 19, 2021) (citing *Iqbal*, 556 U.S. at 678) ("The Complaint's allegations that consumers expect a product labeled 'Vanilla Almondmilk' to be flavored *exclusively* with real vanilla are conclusory statements that the Court is not required to accept") (bold emphasis added).  Plaintiff admits that all of the product ingredients were expressly and clearly communicated on the packaging, as required by FDA, and the complaint does not recite a single representation about the ingredients in the products that is actually false.  (*See, e.g.*, Compl. at ¶¶1, 15, 18, 26.)  Plaintiff admits that the products *did contain cacao*, just not in the form that the plaintiff "imagined."  (*See* Compl. at ¶¶1, 9, 24-25.)  Thus, at most, the complaint alleges that *the plaintiff believed* that the phrase "made with cacao" on the product labels meant the cacao in the products was raw/unprocessed or had specific nutritional benefits.   (*See* Compl. at ¶25 ("In announcing that the Product is *made from 'the finest Trinitario cacao beans,'* the front label of the Products communicates to reasonable consumers that *the Products retain the nutritional qualities found in cacao beans*, when in fact those qualities were lost when *the cacao beans were processed into cocoa*") (emphasis added).)  But the express disclosures on the product labels contradict any such implication and the plaintiff's supposed inference that the products were "nutritious" is not supported by *any statements on the labels pled in the complaint*.  Plaintiff necessarily acknowledges this reality because his theory of liability depends on *representations found on the websites of entirely unrelated companies (and not on the product labels)* to support the theory that "cacao" means "nutritious."  (*See, e.g.*, Compl. at ¶¶19-22 (citing statements on Allrecipes.com, WebMD and websites of superfood vendors (none of which are affiliated with MDLZ) that raw cacao is more nutritious than its processed form, cocoa).)  Of course, these representations are nowhere to be found on the product labels at issue, which accurately disclose that the chocolate bars are "made with" cacao beans and contain

processed cacao (chocolate liquor and cocoa).  (*See* Compl. at ¶¶14, 17, 25.)

Numerous courts in this district, in the Second Circuit and nationwide have rejected similar theories that processing an ingredient makes representations about the presence of that ingredient in a food product misleading.  *See, e.g.*, *Davis v. Hain Celestial Grp., Inc.*, 297 F.Supp.3d 327, 335 (E.D.N.Y. 2018) (statement that a juice was "cold-pressed" "does not cease to be a truthful moniker . . . simply because there were subsequent steps in the juice's production process"); *Campbell v. Freshbev LLC*, 322 F.Supp.3d 330, 341 (E.D.N.Y. 2018) (dismissing claims that a "cold-pressed" juice label misled consumers because the juices were further processed, where the plaintiff could point to no representation on the product label "to indicate that the juice [was] subjected to no other process"); *Cosgrove v. Blue Diamond Growers*, No. 19 Civ. 8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) (rejecting a claim that "vanilla" labeling improperly suggested pure vanilla beans or vanilla extract as an ingredient where the product made "no additional representations about how that flavor is achieved"); *Harris v. Mondelēz Global LLC*, No. 19-cv-2249 (ERK) (RER), 2020 WL 4336390, at *1-3 (E.D.N.Y. July 28, 2020) (labeling Oreo cookies as "Always Made With Real Cocoa" is not misleading where the cocoa was refined through an alkalizing process, which the plaintiffs claimed "diminishes the quality and taste of the cocoa" and reduced health benefits); *see also Manchouck v. Mondelēz Int'l Inc.*, No. 13-2148 WHA, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (dismissing claim that MDLZ falsely advertised strawberry and raspberry Newtons cookies as being "made with real fruit" when they contained processed fruit puree, holding that the plaintiff's theory of deception "strains credibility" where the ingredient list provided "notice

to consumers" that the fruit was in puree form).[2]

Courts in the Second Circuit have similarly dismissed complaints alleging that a product is mislabeled because it does not have nutritional qualities that the plaintiff thought it had when such representations were not on the product label.  *See Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *10-11 (S.D.N.Y. Mar. 18, 2022) (rejecting claims that product created a "false impression" of offering superior nutrition where the plaintiff identified no such misstatements on the product label); *Yu v. Dreyer's Grand Ice Cream, Inc.*, No. 20 Civ. 8512 (ER), 2022 WL 799563, at *8 (S.D.N.Y. Mar. 15, 2022) (rejecting the theory that "consumers generally prefer chocolate made from cacao beans, as opposed to chocolate made with vegetable oils," due to the "health and nutritional benefits"); *Beers v. Mars Wrigley Confectionery US, LLC*, Case No. 21-CV-2 (CS), 2022 WL 493555, at *1, *3 (S.D.N.Y. Feb. 17, 2022) (dismissing claims based on theory that ice cream bars' labeling misled consumers into thinking that milk chocolate coating was made entirely from "ingredients derived from cacao beans," which "have health and nutrition benefits, and are natural and less processed," because "no reasonable consumer would understand the representations on the front label to communicate that the product contained only milk chocolate").  As *Beers* and *Puri v. Costco Wholesale Corp.*, No. 5:21-cv-01202-EJD, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) explained with respect to chocolate products specifically, "it is simply not plausible that a reasonable consumer would purchase and eat chocolate [products] for health or nutritive benefits or satiety value" but, "[e]ven if it were, the Product's packaging makes no claims about health,

---

[2] Plaintiff will likely attempt to rely on *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), but that case is inapposite.  Plaintiffs in *Mantikas* alleged that "Made With Whole Grain" on Cheez-Its labels was misleading because it suggested that there was more whole grain than white flour in the crackers.  *Id.* at 638.  Here, the plaintiff does not allege that the representations about cacao misled him as to the ***quantity*** of cacao in the products; instead, he alleges he was misled as to the ***quality*** of the cacao (and specifically, whether it had been processed into cocoa).  *Mantikas* specifically distinguished cases like this one where courts found that it was not reasonable to assume an advertised ingredient would be in unprocessed form.  *See id.* at 638 (citing *Manchouck*, 2013 WL 5400285, at *2).

nutrition, or satiety." *Puri*, 2021 WL 6000078, at *7; *see also Beers*, 2022 WL 493555, at *6.

More generally, myriad decisions in the Second Circuit have rejected attempts to bring consumer fraud claims in the face of accurate labeling statements. *See, e.g.*, *Or. Chai, Inc.*, 520 F.Supp.3d at 582 (dismissing complaint where "there is nothing to suggest the exclusive, or even predominant, use of vanilla beans as opposed to other sources"); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *4 (E.D.N.Y. Feb 13, 2020) (dismissing complaint that food labeled as "Made with . . . Real Butter" was misleading because it is implausible a reasonable consumer would interpret "real butter" to imply no additional fats); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-CV-2250 (NGG) (RML), 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) ("The statement 'made with real butter' does not violate NY GBL §§ 349 and 350 because it is not misleading.  Defendant's mashed potatoes contain butter").

Because the products' ingredient lists are consistent with the representations on the front labels that the products are "made with" cacao, there is no actionable claim here.  *See Yu*, 2022 WL 799563 at *7 ("The Product's label accurately indicates that the Product's coating contains chocolate"); *Beers*, 2022 WL 493555 at *5 ("The representation that the Product is a chocolate-covered ice cream bar 'with milk chocolate' is confirmed, not contradicted by the ingredient list").  Accordingly, the claims must be dismissed and dismissed with prejudice.

### 2.    Plaintiff's Fraud Claim must be Dismissed

Plaintiff's fraud claim hinges on the same, failed theory of misstatements that should be rejected for the reasons discussed *supra*.  To state a claim for fraud under New York law, the plaintiff must allege that the defendant made "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the

plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). Of course, fraud claims must be pled with particularity. *Id.* at 402-03; Fed. R. Civil P. 9(b). To meet this requirement, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ASTI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). A plaintiff must also "plead scienter, or fraudulent intent." *Greene v. Gerber Prods. Co.*, 262 F.Supp.3d 38, 73 (E.D.N.Y. 2017); *see also Colpitts v. Blue Diamond Growers*, 527 F.Supp.3d 562, 585 (S.D.N.Y. 2021) (the complaint must "allege facts that give rise to a strong inference of fraudulent intent") (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 472 (S.D.N.Y. 2020)). This may be established by (1) "alleging facts to show that defendants had both motive and opportunity to commit fraud" or (2) "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Duran v. Henkel of Am., Inc.*, 450 F.Supp.3d 373, 353 (S.D.N.Y. 2020)). Plaintiff falls well short of meeting this standard for fraud under New York law.

Plaintiff's complaint alleges that MDLZ "intentionally makes materially false and misleading representations regarding the nature of the Products," but such conclusory allegations are entitled to no weight. (*See* Compl. at ¶60.) What is obvious from the complaint is that the plaintiff fails to support his conclusory assertions with any well-pled ***facts***. Absent such factual allegations, the plaintiff's fraud claim must be dismissed. *See Colpitts*, 527 F.Supp.3d at 585 (dismissing fraud claim based on allegation that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate"); *Gordon*, 2022 WL 836773 at *17 (plaintiff's "non-specific and conclusory allegation [of scienter] cannot satisfy Plaintiff's burden to state her fraud claim with

particularity"); *Yu*, 2022 WL 799563 at *10 (allegations devoid of particularized facts failed to give rise to an inference of scienter).

Plaintiff's fraud claim here also fails because the complaint does not plead any false representation of material fact. *See Yu*, 2022 WL 799563, at *10 (no fraud where product ingredient list was accurate); *Wynn*, 2021 WL 168541, at *7 ("Plaintiffs have failed to allege a material misrepresentation of fact or omission since . . . a reasonable consumer would not conclude that the word 'vanilla' on the product's label communicates that the flavor derives exclusively from real vanilla"). According to the complaint, MDLZ made "false and misleading representations" that the products' "dark chocolate consisted of cacao," when, in fact, "the Products are made with cocoa rather than cacao." (Compl. at ¶¶61-62.) As discussed *supra*, this is not a misrepresentation because, as the plaintiff admits, dark chocolate products *are* made with cacao. (*See* Compl. at ¶¶1, 9, 24-25.) If there is no misstatement, there is no fraud.

Because the plaintiff fails to allege the requisite "who, what, when, where and why" to state a fraud claim, fails to allege scienter and cannot identify a misstatement, the fraud claim must be dismissed.

### C.    The Court Can Strike Plaintiff's Class Allegations Now

Even if the plaintiff had stated a claim on which relief could be granted against MDLZ, and he has not, the class allegations should be stricken. Plaintiff seeks to represent a nationwide class of purchasers of the products and brings claims under New York law "on behalf of the Nationwide Class in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia." (*See* Compl. at ¶28 & Counts I-III.) But the allegations demonstrate that class treatment in this case would be inappropriate. The complaint alleges that the plaintiff would not have purchased or paid a premium for the products had he

known that they listed cocoa, not cacao, as an ingredient.  (Compl. at ¶10.)  Even if this were

true, and that is doubtful given the statements on the labels, the same cannot be said of every

consumer of the products in the United States (or even in New York).  Plaintiff's theory depends

on the conclusory (and incorrect) assumption that all "reasonable consumers are attracted to dark

chocolate for the health benefits they associate with it." (*See* Compl. at ¶24.)  As the complaint

makes clear with respect to the plaintiff, countless factors and individual decisions,

circumstances and preferences lead to a consumer's decision to purchase products like the Green

& Black's dark chocolate bars.  (*See* Compl. at ¶9 ("Plaintiff LEE is a lover of dark chocolate

who has been purchasing the Products for years, ***both for their taste and for the health benefits***

***associated with dark chocolate***") (emphasis added)); *see Ackerman v. Coca-Cola Co.*, No. 09

CV 395 (DLI)(RML), 2013 WL 7044866, at *20, *23 n.30 (E.D.N.Y. July 18, 2013) ("Proof that

each class member paid a premium for [the product] over another . . . would not be susceptible to

generalized proof" given that there are "a number of [product] characteristics that customers

might value, and to differing degrees"); *see also Oscar v. BMW of N. Am., LLC*, No. 09 Civ.

11(PAE), 2012 WL 2359964, at *6 (S.D.N.Y. June 19, 2012) (denying certification because

consumers' purchasing decisions "may be based on a variety of factors" unrelated to the

disclosures about which the plaintiff complained); *Weiner v. Snapple Beverage Corp.*, No. 07

Civ. 8742 (DLC), 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) (denying class certification

as to GBL § 349 claim based on product labeling because "individualized inquiries as to

causation, injury, and damages for each of the millions of putative class members would

predominate over any issues of law or fact common to the class").

       It is apparent from the complaint in this case that class treatment would require the Court

to consider numerous individualized factors relating to purchasing decisions, including

convenience, price, brand loyalty, nutrition facts, packaging design and taste, among myriad

other factors.  Moreover, reliance on particular labeling statements and the damages incurred by

each consumer would be necessarily individual issues that would require separate inquiry and

proof for each consumer.  Thus, class treatment would not be a superior means by which to

resolve this dispute and the class allegations should be stricken.

The putative nationwide class allegations should also be stricken because the plaintiff

fails to state claims under the 50 other state statutes referenced in the complaint.  (*See* Compl. at

¶4 ("Defendants' labeling of the Products violates the consumer protection laws of New York

state as well as those of the other forty-nine states and the District of Columbia").)  The

complaint does not plead an independent cause of action for any one of these laws or plead the

elements for a claim under each law.  This is insufficient to survive dismissal and -- if the

complaint is not dismissed in its entirety -- the Court should at the very least strike the

allegations under any laws other than New York.  *See generally In re Aluminum Warehousing*

*Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4743425, at *1 (S.D.N.Y. Sept. 15, 2014),

*aff'd*, 833 F.3d 151 (2d Cir. 2016) (quoting *Twombly*, 550 U.S. at 555) ("A complaint that

merely offers a 'formulaic recitation of the elements of a cause of action will not do.'  Yet

plaintiffs' complaints do not even get that far . . . [T]hey simply provide lists of state consumer

protection statutes, without even listing the elements of these statutes, let alone explaining how

their factual allegations establish valid claims for relief under them").  To the extent these

theories of liability could otherwise proceed, they fail for the same reasons as the plaintiff's New

York consumer protection claims because the statements in question could not deceive a

reasonable consumer.  *See generally In re 100% Grated Parmesan Mktg. & Sales Practices*

*Litig.*, 275 F.Supp.3d 910, 920 (N.D. Ill. 2017) (while state consumer fraud statutes "differ in

certain particulars," "all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer").

### D.    Plaintiff Lacks Standing To Seek Injunctive Relief

"A plaintiff seeking to represent a class must personally have standing." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.* "In a deceptive business practices action under GBL §§ 349 and 350, the Second Circuit has determined that absent an intent to 'purchase the offending product in the future,' a plaintiff lacks standing to seek injunctive relief." *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, No. 17-cv-5775 (LAK), 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (quoting *Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43, 44 (2d Cir. 2018)).

Courts in the Second Circuit regularly dismiss claims for injunctive relief asserted by putative class action plaintiffs who claim to have discovered some deception but cannot demonstrate the potential of a future injury necessary to confer standing. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-49 (2d Cir. 2020) (even if purchasers of an allegedly deceptive product purchase the product again, "there is no reason to believe that all, or even most, of the class members will incur a harm anew . . . . they will be [purchasing the product] with exactly the level of information that they claim they were owed from the beginning"); *Davis*, 297 F.Supp.3d at 339 ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way"); *Atik v. Welch Foods, Inc.*, No. 15-CV-

5405 (MKB)(VMS), 2016 WL 5678474, at *5 (E.D.N.Y. Sept. 30, 2016) ("because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm"); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484(JS)(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) ("Plaintiffs are now aware of the alleged misrepresentations that they challenge, so there is no danger that they will again be deceived by them").

Plaintiff here seeks class-wide injunctive relief in the form of an order "requiring [MDLZ] to immediately cease [the alleged] wrongful conduct" and "ordering [MDLZ] to engage in a corrective advertising campaign."  (*See* Compl. at ¶¶38, 58 & Prayer for Relief §(f).) However, the plaintiff does not allege that he is likely to purchase the products again, only that "should [he] encounter the Products in the future he could not rely on the truthfulness of the packaging without corrective changes to it."  (Compl. at ¶10.)  This is insufficient to establish standing for injunctive relief, whether individually or on behalf of a putative class.  *See Or. Chai*, 520 F.Supp.3d at 574 (dismissing claims because the "failure to allege an actual intent to purchase the challenged product amounted to a failure to establish[] a likelihood of future injury sufficient to show standing") (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 440 F.Supp.3d 226, 239 (S.D.N.Y. 2020)); *Gordon*, 2022 WL 836773 at *8 (plaintiff lacked standing because she would "purchase the product again when she can do so with the assurance that the Product's representations about its components and ingredients are consistent with its representations"); *Yu*, 2022 WL 799563 at *11 (dismissing injunctive relief based on the plaintiff's conditional claim that she would purchase the product again if the representations were accurate); *Kennedy v. Mondelēz Global LLC*, 19-CV-302-ENV-SJB, 2020 WL 4006197, at *5 (E.D.N.Y. July 10, 2020) (no standing to assert claims for injunctive relief where plaintiffs alleged they "***would***

consider purchasing the Products again *if* there were assurances that the Products'
representations were no longer misleading") (emphasis added).

E.        **There Is No Jurisdiction Over MDLZ For Non-New York Class Members**

Plaintiff's claims as to putative out-of-state class members separately fail because the
Court lacks personal jurisdiction over MDLZ relating to those claims.  There must be personal
jurisdiction over MDLZ and "[p]ersonal jurisdiction in class actions must comport with due
process just the same as any other case."  *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696
(BMC)(GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017).  Mondelēz Global LLC is a
Delaware LLC with its principal place of business in Chicago, Illinois.  (*See* Declaration of Anne
K. Assayag in Support of Motion to Dismiss ("Assayag Decl."), Exs. A-B; Compl. at ¶12.[3]
Mondelēz International, Inc. is a Virginia corporation with its principal place of business in
Chicago, Illinois.  (*See* Assayag Decl., Ex. C; Compl. at ¶11 ("Defendant MONDELEZ
INTERNATIONAL, INC. . . . is organized under the laws of Virginia, with a headquarters at 905
West Fulton Market, Chicago, IL").)  Accordingly, general jurisdiction over MDLZ is lacking in
New York and the plaintiff must establish *specific* personal jurisdiction over MDLZ relating to
his claims and the claims of putative class members.  *See Daimler AG v. Bauman*, 134 S.Ct. 746,
761-62 (2014); *Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-1261 (PKC), 2015 WL
5155934, at *1 (S.D.N.Y. Sept. 2, 2015) (corporate entities are only citizens of their state of
incorporation and principal place of business).

Plaintiff seeks to assert claims on behalf of non-New York class members against MDLZ
-- which is also not a "resident" of New York -- based on purchases that took place in other

---

[3] Plaintiff alleges that Mondelēz Global "is organized under the laws of Delaware" but claims that it operates "a
headquarters at 100 Deforest Avenue, East Hanover, NJ 07936."  (Compl. at ¶12.)  Even if this were true, it would
not change the analysis, as the plaintiff admits that Mondelēz Global is not domiciled in New York.  (*See id.*)

states.  Plaintiff argues that the Court possesses specific personal jurisdiction over MDLZ but the complaint offers nothing more than legal conclusions in support of this argument.  (*See* Compl. at ¶6.)  In any event, it is clear from the complaint that the plaintiff's only allegations of conduct attributable to MDLZ in New York are that MDLZ's "Products are advertised, marketed, distributed, and sold throughout New York State."  (*Id.*)  This conduct only has a viable connection to the claims of putative New York class members, not putative class members who are residents of other states.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions").

The U.S. Supreme Court has precluded exercising specific jurisdiction over MDLZ for claims based on actions occurring outside of New York; namely, the non-New York putative class members' alleged purchases of MDLZ's products and (to the extent they suffered any injury) any alleged harm.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1782 (2017) (specific jurisdiction may not be asserted over a nonresident defendant for nonresident plaintiffs' claims because "the conduct giving rise to their claims occurred elsewhere").  *Bristol-Myers* prohibits manufacturing personal jurisdiction for non-resident parties' claims:  "The mere fact that *other* plaintiffs . . . allegedly sustained the same injuries as did the nonresidents" does not allow jurisdiction over nonresidents' claims.  *Id.* at 1781.  *Bristol-Myers* further instructs that, when a court "lacks personal jurisdiction over the claims of putative class members with no connection to [New York, it] therefore would not be able to certify a nationwide class."  *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *5 n.4 (D. Ariz. Oct. 2, 2017).

While the Second Circuit has not addressed the issue, district courts in New York (and

nationwide) have dismissed nonresident claims for lack of jurisdiction pursuant to *Bristol-Myers*.

*See Kennedy v. Mondelēz Global LLC*, 19-CV-302-ENV-SJB, 2020 WL 4006197, at *7

(E.D.N.Y. July 10, 2020) (court lacked personal jurisdiction over claims of non-New York

purchasers); *Chizniak v. CertainTeed Corp.*, No. 1:17-CV-1075 (FJS/ATB), 2020 WL 495129, at

*5 (N.D.N.Y. Jan. 30, 2020) (same); *Gazzillo v. Ply Gem. Indus.*, No. 1:17-CV-1077

(MAD/CFH), 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018); *Spratley v. FCA US LLC*, No.

3:17-CV-0062 (MAD/DEP), 2017 WL 4023348, at *6-7 (N.D.N.Y. Sept. 12, 2017).  Thus, even

if the Court declines to strike the class allegations, it should still dismiss the claims of all non-

New York putative class members.

**F.      The Court Should Not Afford Leave To Amend**

"Leave to amend, though liberally granted, may properly be denied" for "'futility of

amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008)

(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Leave to amend would be futile here

because the claims are preempted and a viable misrepresentation claim cannot be alleged through

amendment.  *See Morales v. N.Y. City. Dep't of Educ.*, 808 Fed. App'x 35, 38 (2d Cir. 2020);

*Melendez v. ONE Brands, LLC*, No. 18-CV-06650 (CBA) (SJB), 2020 WL 1283793, at *9-10

(E.D.N.Y. Mar. 16, 2020) (no leave to amend where claims were preempted and no reasonable

consumer could have been misled by the challenged statement) (citing cases).  Thus, the Court

should grant the motion without leave to amend.

**V.      CONCLUSION**

The complaint in this case does not allege any misstatements on the product labels at

issue because it is true that the dark chocolate products at issue are "made with cacao beans."

While the plaintiff may have "imagined" some additional representations when he viewed the product labels -- *e.g.,* the products were "nutritious" or contained "raw" or "unprocessed" cacao and no cocoa -- those representations are nowhere to be found on the product labels, which unambiguously disclosed all of the products' ingredients, and the plaintiff's expectations badly miscomprehend chocolate processing.  Indeed, FDA regulations make clear that the products at issue here were labeled consistently with the standard of identity applicable to "cacao products," which confirms that products made with cacao -- even if processed into liquor or cocoa -- qualify as "cacao products," and identifies the specific circumstances under which cacao may be listed as an ingredient.  Plaintiff ignores the key facts that (1) there are no misstatements on the product labels and (2) federal law preempts his claims in asking the Court to hold MDLZ liable for labeling statements that meet FDA requirements.

Because the plaintiff cannot modify FDA regulations through his state law claims, and because the product labels support the conclusion that MDLZ provided consumers with exactly what was promised, the claims should all be dismissed with prejudice.  If the Court somehow finds that the claims should not be dismissed in their entirety, the Court should at a minimum (1) strike the class allegations from the complaint, (2) dismiss the claims of out-of-state class members and (3) dismiss the plaintiff's injunctive relief claims for lack of standing.

April 18, 2022

Respectfully Submitted,

By:   /s/ Mark C. Goodman
      Mark C. Goodman
        *pro hac vice*
      mark.goodman@bakermckenzie.com
      **BAKER & McKENZIE LLP**
      Two Embarcadero Center, 11th Floor
      San Francisco, CA  94111
      Telephone:      +1 415 576 3000
      Facsimile:      +1 415 576 3099

Anne Kelts Assayag
*pro hac vice*
anne.assayag@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304-1044
Telephone:        +1 650 856 2400
Facsimile:         +1 650 856 9299

Attorneys for Defendants
MONDELĒZ INTERNATIONAL, INC.
and MONDELĒZ GLOBAL LLC