**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────

C.K. LEE,
*on behalf of himself and others similarly situated*,

        Plaintiff,                           Case No.: 1:22-cv-01127-LJL

                  v.

MONDELEZ INTERNATIONAL, INC. and
MONDELEZ GLOBAL, LLC

        Defendant.

───────────────────────────────

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 1

   I.   Plaintiff's State Law Claims Are Not Expressly Preempted ............................................ 1

   II.   Plaintiff States a Claim Under Rule 12(b)(6) ............................................................. 7

   III.  Plaintiff Plausibly Alleges a Fraud Claim ................................................................ 14

   IV.  It Is Inappropriate for the Court to Strike Plaintiff's Class Allegations .......................... 15

   V.   Plaintiff Has Standing to Seek Injunctive Relief ......................................................... 18

   VI.  The Court Has Jurisdiction Over Claims of Non-New York Class Members .................. 20

CONCLUSION ................................................................................................................ 23

## **TABLE OF AUTHORITIES**

Cases

*Ackerman v. Coca-Cola Co*.,
  2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866 (E.D.N.Y. July 17, 2013) ...................... 20

*Ackerman v. Coca-Cola Co*.,
  CV-09-0395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ............................... 6, 9

*Altria Grp., Inc. v. Good*,
  555 U.S. 70 (2008) ................................................................................................................ 6

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................................... 7

*Astiana v. Hain Celestial Grp., Inc*.,
  783 F.3d 753 (9th Cir. 2015) .................................................................................................. 5

*Ault v. J.M. Smucker Co*.,
  2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) ........................................................ 6

*Bank v. CreditGuard of Am*.,
  2019 U.S. Dist. LEXIS 49363, 2019 WL 1316966 (E.D.N.Y. March 22, 2019) ......... 16, 20, 22

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003) ................................................................................................. 18

*Beaver v. Tarsadia Hotels*,
  816 F.3d 1170 (9th Cir. 2016) ................................................................................................ 7

*Beers v. Mars Wrigley Confectionery US*, LLC,
  2022 U.S. Dist. LEXIS 28898 (S.D.N.Y. Feb. 17, 2022) ...................................................... 14

*Belfiore v. P&G*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) ..................................................................................... 19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 7

*Bell v. Publix Super Mkts., Inc*.,
  982 F.3d 468 (7th Circuit 2020) ...................................................................................... 4, 11

*Bimont v. Unilever U.S., Inc*.,
  14-cv-7749, 2015 U.S. Dist. LEXIS 119908 (S.D.N.Y. Sep. 9, 2015) .................................... 6

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty*.,
  137 S. Ct. 1773 (2017) ......................................................................................................... 20

*Brod v. Sioux Honey Ass'n Coop*.,
  609 Fed. Appx. 415 (9th Cir. 2015) ..................................................................................... 2

*Cal. Ins. Guarantee Association v. Azar*,
  Nos. 17-56526, 17-56528, 2019 U.S. App. LEXIS 30339 (9th Cir. May 16, 2019) ................ 6

*Campbell v. Freshbev LLC*,
 322 F. Supp. 3d 330, 2018 U.S. Dist. LEXIS 111047, 2018 WL 3235768 (E.D.N.Y. 2018) . 20,
 22

*Chenensky v. New York Life Ins. Co.*,
 No. 07 Civ. 11504, 2011 U.S. Dist. LEXIS 48199 (S.D.N.Y. Apr. 27, 2011) ........................ 17

*Chen-Oster v. Goldman, Sachs & Co.*,
 877 F. Supp. 2d 113 (S.D.N.Y. 2012) .............................................................................. 16, 17

*Chernus v. Logitech, Inc.*,
 2018 U.S. Dist. LEXIS 70784, 2018 WL 1981481 (D.N.J. April 27, 2018) .......................... 21

*Cummings v. FCA US LLC*,
 401 F. Supp. 3d 288 (N.D.N.Y. 2019) ................................................................................. 21

*Davis v. Hain Celestial Grp.*,
 297 F.Supp.3d 327 (E.D.N.Y. 2018) ..................................................................................... 8

*Delgado v. Ocwen Loan Servicing, LLC*,
 No. 13-CV-4427 (NGG) (RML), 2014 U.S. Dist. LEXIS 135758 (E.D.N.Y. Sep. 23, 2014).. 9,
 19

*Duran v. Hampton Creek*,
 2016 U.S. Dist. LEXIS 41650, 2016 WL 1191685 (N.D. Cal. Mar. 28, 2016) ...................... 19

*F.T.C. v. Cyberspace.com LLC*,
 453 F.3d 1196 (9th Cir. 2006) .............................................................................................. 9

Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,
 No. 17-564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ................................................. 21

*Gen. Tel. Co. of the Sw. v. Falcon*,
 457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ...................................................... 21

*Gibbs v. MLK Express Servs., LLC*,
 2019 U.S. Dist. LEXIS 78007, 2019 WL 1980123 (M.D. Fla. March 28, 2019) ................... 21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ....................................................................................... 9

*Gonzalez v. Costco Wholesale Corp.*,
 2018 U.S. Dist. LEXIS 171000, 2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) ................... 22

*Gordon v. Target Corp.*,
 2022 U.S. Dist. LEXIS 48769, 2022 WL 836773 (S.D.N.Y. March 18, 2022) ...................... 12

*Harris v. Mondelez Global LLC*,
 No. 19-cv-2249 (ERK) (RER), 2020 WL 4336390 (E.D.N.Y. July 28, 2020) ....................... 11

*Hughes v. Ester C Co.*,
 930 F. Supp. 2d 439 (E.D.N.Y. 2013) .................................................................................... 9

*In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*,
 275 F.Supp.3d 910 (N.D. Ill. 2017) ..................................................................................... 18

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-md-2481 (KBF), 2014 WL 4743425, (S.D.N.Y. Sept. 15, 2014), *aff'd*, 833 F.3d 151
  (2d Cir. 2016) ................................................................................................................ 18

*In re Morning Song Bird Food Litig.*,
  2018 U.S. Dist. LEXIS 44825, 2018 WL 1382746 (S.D. Cal. March 19, 2018) ................... 21

*In re Pepsico Inc.*,
  588 F.Supp.2d 527 (S.D.N.Y. 2008) ..................................................................................... 5

*Izquierdo v. Mondelez Int'l, Inc.*,
  No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795 (S.D.N.Y. Oct. 26, 2016) ................. 9

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013) .................................................................................. 17

*Koehler v. Litehouse, Inc.*,
  2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) .................... 20

*Lonner v. Simon Prop. Grp., Inc.*,
  866 N.Y.S.2d 239 (App. Div 2008.) ....................................................................................... 9

*Lugones v. Pete & Gerry's Organic, LLC*,
  440 F. Supp. 3d 226 (S.D.N.Y. 2020) ................................................................................. 22

*Manchouck v. Mondelez Int'l Inc.*,
  No. 13-2148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ................................ 11, 12

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) ........................................................................................... 10, 11

*Maurizio v. Goldsmith*,
  230 F.3d 518 (2d Cir. 2000) ............................................................................................... 13

*Melendez v. One Brands, LLC*,
  *No.* 18-CV-06650 (CBA) (SJB), 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) ..................... 8

*Molock v. Whole Foods Mkt., Inc.*,
  297 F. Supp. 3d 114 (D.D.C. 2018) ..................................................................................... 21

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ............................................................................................... 15

*Moser v. Benefytt, Inc.*,
  8 F.4d 872 (9th Cir.) ........................................................................................................... 22

*Mussat v. IQVIA, Inc.*,
  953 F.3d 441 (7th Circuit 2020) .......................................................................................... 21

*Napoli-Bosse v. GM LLC*,
  453 F. Supp. 3d 536 (D. Conn. 2020) ................................................................................. 22

*Puri v. Costco Wholesale Corp.*,
  2021 U.S. Dist. LEXIS 242388, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) .............. 13, 14

*Rahman v. Smith & Wollensky Rest. Group, Inc.*,
  06 Civ. 6198, 2008 U.S. Dist. LEXIS 2932 (S.D.N.Y. Jan. 16, 2008) ................................... 16

*Sanchez v. Launch Tech. Workforce Sols, LLC*,
    297 F. Supp. 3d 1360 (N.D. Ga. Jan. 26, 2018) ................................................................ 21

*Sciortino v. PepsiCo, Inc.*,
    108 F. Supp. 3d 780 (N.D. Cal. 2015) ............................................................................... 6

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ............................................................................................ 15

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) .............. 9

*Stutman v. Chemical Bank*,
    95 N.Y.2d 24 (2000) ......................................................................................................... 17

*Suarez v. Cal. Nat. Living, Inc.*,
    2019 U.S. Dist. LEXIS 34634 (S.D.N.Y. Mar. 4, 2019) ............................................. 13, 22

*Sullivan v. Study*,
    18-cv-1939, 2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019) ................................ 16

*Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*,
    305 F. Supp. 3d 1342 (M.D. Fla 2018) ............................................................................. 21

*Tran v. Sioux Honey Ass'n, Coop.*,
    17-cv-110, 2018 U.S. Dist. LEXIS 146380 (C.D. Cal. Aug. 20, 2018) ................................ 3

*Vt. Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc.*,
    03-cv-11465, 2006 U.S. Dist. LEXIS 13683 (D. Mass. Mar. 28, 2006) ............................... 5

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................................. 9

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
    2022 U.S. Dist. LEXIS 47043, 2022 WL 799563 (S.D.N.Y. March 22, 2022) ..................... 14

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 7

Fed. R. Civ. P. 9(b) ................................................................................................................ 14

## Regulations

21 C.F.R. § 163.110 .................................................................................................................. 2

## INTRODUCTION

On February 9, 2022, Plaintiff C.K. Lee ("Plaintiff") filed a Class Action Complaint ("Complaint") alleging that Defendants Mondelez International, Inc. and Mondelez Global, LLC ("Defendants") misbranded a variety of dark chocolate products ("the Products") by representing them as consisting of various percentages of cacao when they actually consist of cocoa, a processed, nutritionally inferior, derivative of cacao.  On April 18, 2022, Defendants filed a motion to dismiss ("Def. Mem.") (ECF No. 19). As detailed below, all their arguments are meritless.

## ARGUMENT

### I.   Plaintiff's State Law Claims Are Not Expressly Preempted

Defendants' preemption argument rests entirely on a fundamental mischaracterization of Plaintiff's allegations, encapsulated in the following lines:

> Given these rules, the plaintiffs' deceptive labeling claims here are expressly preempted because the products plainly comply with federal ingredient list requirements. Plaintiff argues that the products are mislabeled because the ingredients list "cocoa" or "cocoa butter" but the front of the label references that the products are "made with . . . cacao." (*See* Compl. at ¶¶ 17, 47, 55, 62.) This theory directly contravenes FDA regulations and MDLZ's duty to comply with the statutory requirements that apply to the products, as the product labeling is consistent with FDA's regulations prescribing the ingredients and labeling requirements for sweet chocolate.

Def. Mem at 8.

However, Plaintiff at no point alleges that Defendants may not label their Products "sweet chocolate," or any other kind of chocolate for that matter. Plaintiff does not dispute that the FDA makes no distinction between cacao and cocoa with respect of the standard of identity of chocolate products. But the issue here is not the stated general identity of Defendants' Products but Defendants' deceptive, front-label representations about those Products' specific contents—that

they consist of, for example, 70% cacao, when they actually consist of 70% cocoa. Plaintiff also does not allege that the Products' ingredients statements are unlawful. Defendants' ingredient statements are relevant to Plaintiff's allegations not because they are themselves deceptive but because they betray the deceptiveness of Defendants' front-label representations, revealing that the chocolate consists of processed cocoa rather than natural cacao.

Citing to 21 C.F.R. § 163.110, Defendants claim that their "chocolate products' front labels can say they are made with or contain cacao but cannot list cacao as an ingredient." Def. Mem. at 8. But Defendants do not actually quote the specific language that they contend authorizes them to represent their chocolate as consisting of cacao when it actually contains processed cocoa. Plaintiff has not been able to discover any such language either, and that is because it does not exist. The general subject matter of Part 163 is described as "Cacao Products," but that scarcely warrants Defendants' leap that, therefore, their front labels may say "70% Cacao" when those Products actually consist of 70% Cocoa. Part 163 provides various standards of identity for various chocolate products, but Plaintiff's claims *do not concern standards of identity but something else that Part 163 simply does not address*—front label representations about comparative chocolate quality.

Defendants cite *Brod v. Sioux Honey Ass'n Coop*., where the Ninth Circuit found that California law was preempted to the extent it "prohibits de-pollinated honey from being labeled and sold as 'honey.'" The court observed that "under federal law, de-pollinated honey must be labeled with the 'common or usual name of the food, if any there be . . . . 21 U.S.C. § 343(i)" and that the "district court decided correctly that the 'common or usual name' of de-pollinated honey is 'honey.'" *Brod v. Sioux Honey Ass'n Coop*., 609 Fed. Appx. 415, 415 (9th Cir. 2015). The court sensibly observed that ordinary parlance makes no distinction between pollinated and de-

pollinated honey with respect to the identity of honey. But this fact would not give the defendant license to represent its honey as pollinated on the front label if it was, in fact, de-pollinated. Likewise, Plaintiff acknowledges that chocolate remains chocolate whether made of cocoa or cacao. But that does not give Defendants license to represent their chocolate as "70% Cacao" when it is not that.

This case is more comparable to *Tran v. Sioux Honey Ass'n, Coop.*, where the plaintiff alleged that a honey's front label representations of "Pure" or "100% Pure" were misleading because the honey contained glyphosate. Defendant argued that these claims were preempted, just like Defendants conflating the issue of product identity with that of front-label representations concerning the product's specific qualities:

> Sioux Honey focuses specifically on the requirements of 21 U.S.C. § 343(i) which requires that a food product label bear the "common or usual name of the food, if any there be," or, where the food product "is fabricated from two or more ingredients, the common or usual name of each such ingredient." Sioux Honey argues that its labeling of its Sioux Bee Products as "honey" is fully compliant with this requirement and that there is no requirement to note the presence of glyphosate because honey is not "fabricated" from it. (Mem. at 6.)

*Tran v. Sioux Honey Ass'n, Coop.*, 17-cv-110, 2018 U.S. Dist. LEXIS 146380, at *6 (C.D. Cal. Aug. 20, 2018).

After observing that the issue was not the product's identity as honey, which was not in dispute, but rather the "Pure" and "100% Pure" representations, the court rejected Defendant's argument that plaintiff's claims were preempted, given defendant's inability "to identify any FDA regulation that requires it to label its honey as 'Pure' or '100% Pure.'" *Id.* at *7-8. Defendant in the instant action is engaged in a similar kind of obfuscation, deliberately conflating the issue of the product's identity, which was represented consistently with FDA regulations, with the issue of front-label representations that do not convey an FDA-approved identity and, indeed, lie entirely outside the scope of FDA regulations. Analogously to *Trans*, there is no FDA requirement that

Defendants label their Products as "x% cacao." Accordingly, Plaintiff's claim that such is unlawful (given the Products' actual make-up) is not preempted.

The same obfuscation by a defendant was at work again in *Bell v. Publix Super Mkts., Inc.*, where plaintiffs alleged that defendant's "100% Grated Parmesan Cheese" was deceptive because, while the product was 100% grated, it was not 100% cheese, containing as it did anticaking agents and antimycotics. *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 483 (7th Circuit 2020). The defendant objected that the claim was expressly preempted because the standard of identity for "grated cheese" allowed for these additives and because there was no specific FDA regulation barring defendant from calling its product "100%" cheese. *Id*. at 483. However, the Seventh Circuit Court of Appeals held that "defendants read the express preemption provision too broadly." *Id*. at 483-84. Plaintiffs were "not seeking to *add* labeling requirements" but "only to stop defendants from voluntarily adding deceptive language to the federally permitted labels." *Id*. at 484.

That is the situation in this action as well. Plaintiff is not arguing that Defendants should be required to disclose that their chocolate consists of cocoa rather than cacao. They would be perfectly within their rights to just label their products chocolate without saying anything at all about whether the chocolate is cacao or cocoa. Thus, Plaintiff is not attempting "to *add* labeling requirements" but only to "stop defendants from voluntarily adding deceptive language" to the Products' front labels. Were Defendants to simply cease labeling their products as "x% cacao," that would *not* place them in violation of any FDA requirements. Accordingly, Plaintiff's claims are not expressly preempted.

Defendants also cite to *In re Pepsico Inc*., where the court held that state law could not require the label of purified bottled water products to disclose that that water came from the municipal water supply rather than a natural spring—notwithstanding that the image on the label

suggested that it came a natural spring. This was because "the FDA had issued guidance regarding the disclosure of the source of bottled water, specifically that purified water need not denote its source (*i.e.*, spring, tap, etc.)" after having reasoned "that with respect to purified water, the purification, and not the source, is the reason consumers buy it." *In re Pepsico Inc.*, 588 F.Supp.2d 527, 537 (S.D.N.Y. 2008). Defendants cannot point to any such specific determination in the instant action. They cannot show that the FDA has determined that consumers are indifferent to whether their chocolate consists of cacao or cocoa and that chocolate merchants may, therefore, use the terms interchangeably on their front labels. Notwithstanding its ruling, the *PepsiCo* court went on to clarify that it was not suggesting "that state law claims cannot survive preemption where they are premised on misrepresentations concerning subject matter that the FDA has not endeavored to regulate." *Id*. at 538. And that describes the misrepresentations on Defendants' front labels.

It is true that the FDA has never promulgated regulations specifically prohibiting chocolate manufacturers from marketing their chocolate as cacao if it actually consists of cocoa. But Defendants can hardly argue "that the FDA's failure to issue specific regulations on the subject is tantamount to a conscious decision by the agency to permit any use of this term a manufacturer sees fit. This argument proves too much. By this logic, a manufacturer could make any claim— wild, untruthful, or otherwise—about a product whose contents are not addressed by a specific regulation. The statute, however, proscribes statements that are 'false or misleading in any particular,' not statements that are 'prohibited by specific FDA regulations.'" *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 758 (9th Cir. 2015). *See also Vt. Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc*., 03-cv-11465, 2006 U.S. Dist. LEXIS 13683, at *19 (D. Mass. Mar. 28, 2006) ("The FDA also clarified that where no federal requirement exists, preemption   does not occur.");

*Ackerman v. Coca-Cola Co*., CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *21 (E.D.N.Y. July 21, 2010) (plaintiffs may escape the preemptive force of the FDCA "if the requirements plaintiffs seek to impose are not with respect to claims of the sort described in [the FDCA]."); *Ault v. J.M. Smucker Co*., 2014 U.S. Dist. LEXIS 67118, at *8 (S.D.N.Y. May 15, 2014) (holding that plaintiffs' cause of action against allegedly deceptive "all natural" claims are not preempted because "no federal specifications exist here."); *Bimont v. Unilever U.S., Inc.*, 14-cv-7749, 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements.").

At the end of the day, Defendants' entire case rests on the fact that Part 163 refers to chocolate generically as "cacao products" as that Part's general heading. That is a very slender reed on which to hang their argument, given that nothing in the regulations expressly or impliedly addresses the specific front-label representations at issue in this case. At most, the heading establishes that the standard of identity for chocolate makes no distinction between cacao and cocoa. It does not, however, give Defendants license to use the terms interchangeably in connection with specific representations regarding the specific attributes of the chocolate products in question. While Defendants make much ado about the Part 163 heading, "[i]n mapping the scope of a preemption clause, the Court typically must 'accept the reading that disfavors pre-emption,' if such reading is plausible." *Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 798 (N.D. Cal. 2015) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008)).

Had the FDA intended to regulate front-label representations of specific chocolate attributes, it would have done so clearly and unmistakably, without requiring all the inferential leaps and free association indulged in by Defendants. *See also Cal. Ins. Guarantee Association v. Azar*, Nos. 17-56526, 17-56528, 2019 U.S. App. LEXIS 30339, at *11 (9th Cir. May 16, 2019)

("when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption.") (internal quotes and citation omitted); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1179 (9th Cir. 2016) ("Our preemption analysis is driven by the presumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotes and citations omitted).

## II.      Plaintiff States a Claim Under Rule 12(b)(6)

To prevail on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's claim for relief must be "plausible on its face," *id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 129 S. Ct. at 1937. A plaintiff must only "nudge" his or her allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548.

Plaintiff's allegations easily meet this threshold. The essence of Defendants' argument for dismissal is that their Products do indeed contain cacao because the Complaint acknowledges that cocoa is derived cacao, the former being the processed form of the latter. *See* Def. Mem. at 12. However, the possibility that cocoa might be said to be a form of cacao on some molecular level of analysis is hardly germane to the expectations of the reasonable consumer, given that, in ordinary parlance, "cocoa" is used to designate the processed form of cacao whereas "cacao" is used to

designate the unprocessed form. It is this ordinary understanding, not any molecular understanding, that is relevant to the plausibility of Plaintiff's allegations.[1]

Defendants further argue that they have made no claims about the Products' nutritional qualities. But Plaintiff's claims do not presuppose otherwise. The false statements that are the subject of this action are Defendants' front-label representations that the Products consist in some percentage of cacao (rather than cocoa). The nutritional superiority of cacao is merely the reason why the misstatement is material to reasonable consumers, as Complaint ¶¶ 19-22 amply demonstrate.  As further discussed below, the liability under NY GBL §§ 349, 350 does not presuppose that the defendant has made any representations concerning why the misrepresentation at issue is material.

Citing *Davis v. Hain Celestial Grp*., 297 F.Supp.3d 327, 334 (E.D.N.Y. 2018) and *Melendez v. One Brands, LLC, No*. 18-CV-06650 (CBA) (SJB), 2020 WL 1283793, at *6 (E.D.N.Y. Mar. 16, 2020), Defendants also argue that any ambiguity created by the Products front label representations is cured by the ingredients statement, which discloses the presence of cocoa rather than unprocessed cacao.  *See* Def. Mem. at 10-11. However, Plaintiff denies that the front-label is ambiguous, given that reasonable consumers understand "cacao" as opposed to "cocoa" to refer to the unprocessed form of cacao. The representation might be ambiguously true in some technical, scientific sense, given that cacao is derived from cocoa and can, to that extent, be described as a form thereof. But, as discussed above, that is irrelevant to the reasonable consumer's perceptions. Where a front-label

---

[1] Defendants desperately attempt to discredit Plaintiff's claims by highlighting the Complaint's use of the term "imagine" in describing Plaintiff's belief that the Products consisted of what their front-labels state they consist of, cacao. *See* Def Mem. at 3, 12, 25. It should be obvious that the term is being used in the sense that is synonymous with "believe," which is one of the accepted meanings of "imagine" *See* https://www.merriam-webster.com/dictionary/imagine and https://www.thesaurus.com/browse/imagine.

representations is unambiguously false, as in the instant case, the existence of other, truthful representations elsewhere on a product label cannot cure the deception. This principle has been affirmed by numerous courts in this District and elsewhere. For example,

- *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *16 (S.D.N.Y. Oct. 26, 2016) ("Môndelez does not cite a single controlling decision of law standing for the proposition that food packaging is incapable of being materially misleading if it displays the net weight and lists the number of pieces inside of the package. This Court is unwilling to manufacture such a precedent here.")

- *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.")

- *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 479 (S.D.N.Y. 2014) (rejecting defendant's argument that "it is unreasonable to assume each Aveeno product contains exclusively natural ingredients when its labeling affirmatively identifies its one or two natural ingredients as well as the synthetic ingredients.")

- *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing.")

- *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *49 (E.D.N.Y. Sep. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement.")

- *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (RML), 2014 U.S. Dist. LEXIS 135758, at *24 (E.D.N.Y. Sep. 23, 2014) ("[a] solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures.") (quoting *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006))

- *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) (a disclaimer stating the product is not intended to treat any disease does not eliminate "the possibility of a reasonable consumer being misled.")

- *Lonner v. Simon Prop. Grp., Inc.*, 866 N.Y.S.2d 239, 247 (App. Div 2008.) (the complaint stated a cause of action under NY GBL § 349 because "it alleges that the inadequate font size in which the dormancy fee provision was printed, and the defendant's concomitant failure to conspicuously disclose that provision, constituted a deceptive business practice.")

Further, even if the front-label representations were ambiguous, which they are not, that would be of no avail after the Second Circuit's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), which went further than the foregoing precedents by holding that businesses cannot take cover behind ambiguous labels in order to escape liability for their consumer fraud. Defendants attempt to preemptively distinguish *Mantikas*, arguing (1) that *Mantikas* concerned the quantity of an ingredient rather than its quality, the issue here, and (2) "*Mantikas* specifically distinguished cases like this one where courts found that it was not reasonable to assume an advertised ingredient would be in unprocessed form." Def. Mem. at 14. Defendants' argument fails for two reasons.

First, it is, in fact, reasonable for consumers to assume that the cacao in their Products is unprocessed because (a) many dark chocolate products do, in fact, contain unprocessed cacao, as revealed in Complaint ¶¶ 19-22, and (b) the term "cocoa" *specifically denotes* processed cacao; accordingly, it is reasonable to infer that Defendants' cacao representations indicate unprocessed cacao. Second, while *Mantikas* did concern the quantity of an ingredient rather than its nature, the underlying principles promulgated there are eminently applicable to this case: "[T]he rule that Defendant contends emerges from these district court decisions—that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present—would validate highly deceptive advertising and labeling." *Id*. at 638. That is precisely Defendants' argument here. They argue that "cacao" is not deceptive because cacao is present in the technical sense that cocoa consists of processed cacao. But this fact does not preclude a reasonable consumer from being deceived about the quality of the chocolate they are purchasing, given the commonly understood distinction between cacao and cocoa that the Complaint documents.

10

Therefore, the fact that the Products may be described as containing cacao in the technical, literal sense that the cocoa therein originated in cacao before being processed into its present form does not immunize Defendants from liability. *See Bell*, 982 F.3d at 477 ("Lots of advertising is aimed at creating positive impressions in buyers' minds, either explicitly or more subtly by implication and indirection. And lots of advertising and labeling is ambiguous. Deceptive advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning. We agree with the Second Circuit that a rule that immunized any ambiguous label so long as it is susceptible to one non-deceptive interpretation 'would validate highly deceptive advertising.'") (quoting *Mantikas*, 910 F.3d at 638)).

All of Defendants' cited cases are eminently distinguishable from the instant action and, indeed, serve to highlight the strengths of Plaintiff's claims. In *Harris v. Mondelez Global LLC*, No. 19-cv-2249 (ERK) (RER), 2020 WL 4336390, at *1-3 (E.D.N.Y. July 28, 2020), the court rejected plaintiff's claims that labeling Oreo cookies as "Always Made With Real Cocoa" was deceptive because the cocoa was refined through an alkalizing process.  In *Manchouck v. Mondelez Int'l Inc*., No. 13-2148 WHA, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013), the court dismissed claims that defendants falsely advertised its cookies as "made with real fruit" because the fruit had been processed into puree. However, Plaintiff's case here does not hinge on some contestable definition of an inherently abstract concept such as "real," which is susceptible to a wide range of meanings in different contexts. Rather, Plaintiff argues that Defendants out-and-out misrepresented their cocoa as cacao.

The *Harris* court observed that the plaintiffs' failure to "dispute that the challenged products are in fact made with cocoa … is fatal to their case." *Harris*, 2020 U.S. Dist. LEXIS 133715, at *5-6. But, here, Plaintiff *does* dispute that Defendants' chocolate consist of cacao. In

*Manchouck*, the court rejected plaintiffs' contention that "real strawberries and raspberries in their puréed form are no longer 'real fruit'" because "[i]t is ridiculous to say that consumers would expect snack food 'made with real fruit' to contain only 'actual strawberries or raspberries,' rather than these fruits in a form amenable to being squeezed inside a Newton." *Manchouck*, 2013 U.S. Dist. LEXIS 138877, at *8-9. But there is nothing "ridiculous" in supposing that the Products contain cacao rather than cocoa when some chocolates do contain just that and when it is known that consumers value unprocessed cacao over processed cocoa (and when the label refers to cacao). As the various quotes in the Complaint demonstrate, there is nothing idiosyncratic or implausible in Plaintiff's understanding of "cacao." *See* Complaint ¶¶ 19-22.

Defendants also cite to *Gordon v. Target Corp.*, where the court dismissed plaintiff's allegation that "Defendant's 'marketing scheme' is deceptive because it creates the 'false impression' that the Product will 'give toddlers the nutrition that they wouldn't get from other sources' and is thus the necessary 'next step' in toddler development," given that the plaintiff had "fail[ed] to identify any misstatements on the Product's label that deceive caregivers in this manner." *Gordon v. Target Corp.*, 2022 U.S. Dist. LEXIS 48769, *29, 2022 WL 836773 (S.D.N.Y. March 18, 2022). However, Plaintiff's allegation here is not that various aspects of Defendants' marketing combine to create some overall misleading "impression" of anything. To the contrary, Plaintiff alleges that Defendants' percent-cacao representations are literally false misstatements, given that the Product are, in fact, made from cocoa in the sense that concerns the reasonable consumer.

Defendants employ this case to further yet another of their caricatures of Plaintiff's allegations; namely, that he accuses Defendants of misrepresenting the Product's nutritional qualities. But Plaintiff accuses Defendants only of misrepresenting cocoa as cacao. As explained

above, health benefits of unprocessed cacao are the reason why this deception is *material* to reasonable consumers. Plaintiff never alleges, and does not need to allege, that Defendants issued any statement about this. Under NY GBL § 349 or § 350, a plaintiff must plausibly allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. Cal. Nat. Living, Inc.*, 2019 U.S. Dist. LEXIS 34634 *1, *17 (S.D.N.Y. Mar. 4, 2019) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).  However, the law does *not* require Plaintiff to furthermore allege that Defendants also issued some statement about *why* the misrepresented facts should be material to the reasonable consumer. It is enough that they *are* material. A product label that misrepresented the amount of Vitamin C contained in a food would violate the law even if did not contain an additional statement to the effect that "Vitamin C is healthy." Likewise with Defendants' cacao representations.

Relying on various media quotes to corroborate his own testimony, Plaintiff plausibly alleges that Defendants' misrepresentations are material because reasonable consumers are attracted to *certain kinds* of dark chocolate for its health benefits. *See* Complaint ¶¶ 19-22. Defendants cite to *Puri v. Costco Wholesale Corp.* in a deceptive and disingenuous gambit to discredit this allegation, misleadingly quoting that court as holding that "it is simply not plausible that a reasonable consumer would purchase and eat chocolate [products] for health or nutritive benefits or satiety value." Def. Mem. at 14. In fact, that court held that "it is simply not plausible that a reasonable consumer would purchase and eat *chocolate covered ice cream bars* for health or nutritive benefits or satiety value." *Puri v. Costco Wholesale Corp.*, 2021 U.S. Dist. LEXIS 242388, *21, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) (emphasis added). There is a world of difference between high-fat, sugar-laden chocolate ice cream and the kind of chocolate that

13

Defendants' Products purport to be. The Complaint never alleges, and does not need to allege, that reasonable consumers consider *all* chocolate products to be healthy. It is precisely because reasonable do *not* believe this to be the case that the cocoa/cacao distinction is material.

Moreover, the underlying allegation in *Puri* and some other cases cited by Defendants— *Beers v. Mars Wrigley Confectionery* US, LLC and *Yu v. Dreyer's Grand Ice Cream, Inc*.—was that the defendants' chocolate representations failed to disclose the presence of ingredients other than chocolate, with all these courts holding that the expectation that they would contain chocolate exclusively was unreasonable. See *Puri*, 2021 U.S. Dist. LEXIS 242388 at *15-20; *Yu v. Dreyer's Grand Ice Cream, Inc*., 2022 U.S. Dist. LEXIS 47043, *10-13, 2022 WL 799563 (S.D.N.Y. March 22, 2022); *Beers v. Mars Wrigley Confectionery US*, LLC, 2022 U.S. Dist. LEXIS 28898, *9-10 (S.D.N.Y. Feb. 17, 2022). Those cases are therefore wholly irrelevant to this case, since Plaintiff's allegations concern how the Products' chocolate ingredients are represented on the front label, not the presence of non-chocolate ingredients.

## III.    Plaintiff Plausibly Alleges a Fraud Claim

Defendants' arguments for dismissing Plaintiff's common law fraud claims are largely the same as their arguments for dismissing his statutory claims under NY GBL §§ 349, 350. Accordingly, they fail for reasons that Plaintiff has just provided and will not repeat here. That said, Defendants do additionally argue that Plaintiff's claims cannot satisfy Fed. R. Civ. P. 9(b)'s requirement that fraud claims be pled with particularity (not a requirement for Plaintiff's statutory claims) because Plaintiff "fails to allege the requisite 'who, what, when, where and why' to state a fraud claim." Def. Mem. at 17. This simply ignores the Complaint, which answers all these questions clearly. The Complaint alleges that Defendants deceived Plaintiff through their front-label cacao representations on November 21, 2021, when Plaintiff purchased one of the Products

at a Westside Market store in New York City. *See* Complaint ¶¶ 9-10. In addition, the Complaint reproduces the exact label of the specific Product purchased. *See* Complaint ¶ 14. A "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations," and the Complaint plainly provides this. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

While Defendants also claim that Plaintiff fails to allege the requisite *scienter*, they do not actually provide any argument to this effect. A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Plaintiff's allegations satisfy both these prongs for the simple reason that Defendants are in the business of both manufacturing and marketing chocolate products. Accordingly, they can be presumed to understand the difference between cocoa and cacao and why that difference matters to consumers. As Complaint § 23 shows, other chocolatiers know how to honestly describe their cocoa-based chocolate products as containing cocoa, so we can reasonably surmise that Defendants consciously considered which term to use and decided upon the one that is more profitable but also more deceptive.

## IV.   It Is Inappropriate for the Court to Strike Plaintiff's Class Allegations

Defendants inappropriately ask the Court to strike Plaintiff's class allegations. "While the Second Circuit has not addressed whether a motion to strike class allegations may be brought before a class is certified, courts in this Circuit have held that such motions may be addressed prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear. … Thus, the Court may consider a motion to strike class

allegations where it is clear that the putative class action will not proceed and/or the motion to strike 'addresses issues separate and apart from issues that will be decided on a class certification motion.'" *Bank v. CreditGuard of Am.*, 2019 U.S. Dist. LEXIS 49363, *10-11, 2019 WL 1316966 (E.D.N.Y. March 22, 2019) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)) (other internal quotes and citations omitted).

Here, Defendants' argument for striking Plaintiff's class claims is that "countless factors and individual decisions, circumstances and preferences lead to a consumer's decision to purchase products like the Green & Black's dark chocolate bars," including "convenience, price, brand loyalty, nutrition facts, packaging design and taste, among myriad other factors." Def. Mem. at 18-19. The suggestion, therefore, is that Plaintiff will be unable to establish typicality and/or predominance on a class certification motion, but that is why Defendants' motion to strike is not "address[ing] issues separate and apart from issues that will be decided on a class certification motion." To the contrary, the motion address *exactly* the issues that will be decided at class certification, which is why the Court must deny that motion in keeping with clear precedent.

The weakness of Defendants' argument is betrayed by their own citations to case law, which all involve *Rule 23 class certification decisions*, not motions to strike class allegations at the outset of the litigation. *See also Sullivan v. Study*, 18-cv-1939, 2019 U.S. Dist. LEXIS 47073, at *19 (S.D.N.Y. Mar. 21, 2019) ("Because none of the issues raised by Study.com are separate and apart from the issues that will be decided on a class certification motion, the Court declines to entertain them at this stage of the litigation.") (internal quotes and citations omitted); *Rahman v. Smith & Wollensky Rest. Group, Inc.*, 06 Civ. 6198, 2008 U.S. Dist. LEXIS 2932, at *11 (S.D.N.Y. Jan. 16, 2008) ("sufficiency of class allegations should be determined in the context of a motion

for class certification … where the issues raised in the motion to strike are the same ones that would be decided in connection with determining the appropriateness of class certification").

Moreover, Defendants' argument about the complexity of consumer choice proves too much, since it could be raised in almost any consumer fraud class action. So, by Defendants' logic, no such lawsuit would ever survive past a motion to dismiss. There is nothing idiosyncratic or even unusual in Plaintiff's allegation that he is attracted to dark chocolate for both its taste and health benefits. On the contrary, such preferences are commonplace, and Plaintiff must be afforded an opportunity to prove this at class certification. See *Chenensky v. New York Life Ins. Co.*, No. 07 Civ. 11504, 2011 U.S. Dist. LEXIS 48199, at *3-4 (S.D.N.Y. Apr. 27, 2011) ("Motions to strike are generally looked upon with disfavor [and] a motion to strike class allegations...is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of...litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.") (citations and internal quotation marks omitted); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (same).

Things might stand otherwise had Plaintiff alleged that he was injured because he uses Defendants' chocolate as part of a special religious ritual that requires genuine cacao rather than processed cocoa. In that case, Defendants could plausibly argue that "that no discoverable facts exist that might" establish Plaintiff's typicality. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). But, unfortunately for Defendants, that is not the source of Plaintiff's injury. Furthermore, since "reliance is not an element of a section 349 claim," Plaintiff need only show that the qualities of unprocessed or minimally processed cacao is *material* to other class members. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) Plaintiff is not required to

prove that these qualities are the sole reason why anyone ever purchased the Products.

Defendants' argument that Plaintiff may not bring class claims under the laws of other states also fails. Whether these laws are sufficiently similar to those of New York is likewise an issue to addressed on a class certification motion.  Defendants' suggestion that these laws are too different to be enforced through a single class action is furthermore belied by their own citation to *In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*, 275 F.Supp.3d 910, 920 (N.D. Ill. 2017), where the court found that the consumer protection laws of *ten* different states "all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer." Defendants' citation to *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4743425, at *1 (S.D.N.Y. Sept. 15, 2014), *aff'd*, 833 F.3d 151 (2d Cir. 2016), is inapposite, as the laws at issue there were complex antitrust statutes that could indeed be expected to vary considerably from state to state—unlike the false advertising laws that Defendants stand accused of violating.

## V.      Plaintiff Has Standing to Seek Injunctive Relief

Notwithstanding Defendants' prolific citations to case law, their only actual argument for dismissing Plaintiff's request for injunctive relief is that he "does not allege that he is likely to purchase the products again, only that 'should [he] encounter the Products in the future he could not rely on the truthfulness of the packaging without corrective changes to it.'" Def. Mem. at 21 (quoting Complaint ¶10.). This is a rather pedantic objection, however, since Plaintiff would not care about whether he can rely on the truthfulness of Defendants' packaging if he had no intention of purchasing the Products again.  Thus, the allegation that Defendants contend is missing from the Complaint is logically implicit in Plaintiff's other allegations, and any failure to make it explicit is hardly a reason to dismiss the Complaint. *See Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003)

("[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury.").

Further, Defendants' more general contention that plaintiffs who learn that they have been deceived can never have standing for injunctive relief is wrong. Plaintiff does not know whether Defendants intend to remedy their deceptive practices by starting to use actual cacao in the Products. And courts have recognized that such uncertainty regarding the nature of a defendant's future products is itself a source of injury, which can be redressed only through injunctive relief:

> [S]ome courts have focused on the particular nature of the injury at issue to find standing. They have found at least two injuries sufficient to establish standing where the plaintiff is aware of the misrepresentation: absent an injunction, the plaintiff-consumer will 1) no longer be able to confidently rely on the defendant's representations …
>
> … absent an injunction, the plaintiff-consumer will … 2) refrain from purchasing products in the future even if they in fact conform to her expectations. When a consumer discovers that a representation about a product is false, she doesn't know that another, later representation by the same manufacturer is also false. She just doesn't know whether or not it's true. A material representation injures the consumer not only when it is untrue, but also when it is unclear whether or not it is true.

*Duran v. Hampton Creek*, 2016 U.S. Dist. LEXIS 41650, 2016 WL 1191685, at *18-19 (N.D. Cal. Mar. 28, 2016).

Finally, courts in this circuit and elsewhere have recognized that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. P&G*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015). To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *Id. See also Delgado v. Ocwen Loan Servicing Company, LLC*, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would eviscerate the intent of the California legislature in creating consumer protection statutes.") (internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866,

at *56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

## VI.   The Court Has Jurisdiction Over Claims of Non-New York Class Members

Defendants argue (a) that the Court lacks general jurisdiction over the claims of non-New York Class members and (b) *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) rules out specific jurisdiction over these claims.  Plaintiff does not dispute that the Court lacks general jurisdiction over Defendants, but Defendants interpretation of *Bristol-Myers* runs against the weight of the case law to date. Defendants' only claimed support for that interpretation is four district court decisions in the Second Circuit. See Def Mem. at 24. But, in all of these, the issue was specific jurisdiction over the claims of out-of-state *named plaintiffs* whose only connection to the forum state was their similarity to the claims of in-state plaintiffs. None dispute that *Bristol-Myers* bars jurisdiction over such claims. However, the "Supreme Court explicitly left open the question of whether *Bristol-Meyers* … should be applied to nationwide class actions." *Bank v. CreditGuard of Am.*, 2019 U.S. Dist. LEXIS 49363, *34, 2019 WL 1316966 (E.D.N.Y. March 22, 2019). *See also Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 336, 2018 U.S. Dist. LEXIS 111047, *2, 2018 WL 3235768 (E.D.N.Y. 2018) (same). The Second Circuit has not yet ruled on whether *Bristol-Myers Squibb* is applicable to the claims of unnamed out-of-state class members, but the "Supreme Court has regularly entertained cases involving nationwide classes where the plaintiff relied on specific, rather than general, personal jurisdiction in the trial court, without any comment about the supposed jurisdictional problem." *Mussat v. IQVIA, Inc*.,

953 F.3d 441, 445 (7th Circuit 2020). And the "class-action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

While different courts have reached different conclusions, "the majority of the courts that have considered this issue have found that *Bristol-Myers Squibb* does not apply in the federal class action context." *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 317 (N.D.N.Y. 2019). *See also Chernus v. Logitech, Inc*., 2018 U.S. Dist. LEXIS 70784, *19, 2018 WL 1981481 (D.N.J. April 27, 2018) (same). Here is just a sampling of these decisions, including in the Second Circuit:

- *Mussat*, 953 F.3d at 447 ("We see no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so.")

- *Cummings*, 401 F. Supp.3d at 317 ("This Court therefore does not believe that *Bristol-Myers Squibb* stands for the point of law that all putative class members in a class action must meet the requirements of personal jurisdiction imposed on plaintiffs in ordinary (non-class action) cases.")

- *Molock v. Whole Foods Mkt., Inc*., 297 F. Supp. 3d 114, 126 (D.D.C. 2018) ("the court agrees with Plaintiffs and concludes that *Bristol-Myers* does not apply to class actions")

- *Sanchez v. Launch Tech. Workforce Sols, LLC*, 297 F. Supp. 3d 1360, 1365 (N.D. Ga. Jan. 26, 2018) (finding that "claims asserted in a class action . . . are prosecuted through representatives on behalf of absent class members")

- *In re Morning Song Bird Food Litig*., 2018 U.S. Dist. LEXIS 44825, *16, 2018 WL 1382746 (S.D. Cal. March 19, 2018) (the Court finds *Bristol-Myers* inapplicable to this suit which involves a class action)

- *Gibbs v. MLK Express Servs., LLC*, 2019 U.S. Dist. LEXIS 78007, *44, 2019 WL 1980123 (M.D. Fla. March 28, 2019) (observing that *Bristol-Myers* is inapplicable to class actions in federal court)

- *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc*., 305 F. Supp. 3d 1342, 1351 (M.D. Fla 2018) ("the Court declines to extend *Bristol-Myers* to the class action context")

- *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-564, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) ("[T]he Supreme Court did not extend its reasoning to bar the

nonresident plaintiffs' claims here, and *Bristol-Myers* is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff.").

Given the clear weight and direction of the case law, the Court should rule that *Bristol-Myers* is inapplicable to unnamed class members. Even if the Court is not inclined to make that determination at this stage of the litigation, it should, at a minimum, defer the matter until Plaintiff moves for class certification, as many courts have done, including some in the Southern District (as well as the 9th Circuit Court of Appeals). These decisions include:

- *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 236 (S.D.N.Y. 2020) (holding that while *Bristol-Myers* applies to *named* plaintiffs in class actions, "the Court will not at this stage in the litigation dismiss the claims of *potential* class members who may not reside in New York");

- *Suarez v. Cal. Nat. Living, Inc.*, 2019 U.S. Dist. LEXIS 34634, *15, 2019 WL 1046662 (S.D.N.Y. March 4, 2019) ("The Court concludes personal jurisdiction over plaintiff's out-of-state claims is best assessed at the class certification stage, not on the instant motion to dismiss. Specific jurisdiction in a class action arises from the named plaintiff's causes of action, and defendant is indisputably subject to the Court's specific jurisdiction as to plaintiff's claims.");

- *Napoli-Bosse v. GM LLC*, 453 F. Supp. 3d 536, 542 (D. Conn. 2020) ("I do not reach the question of whether, in light of *Bristol-Myers Squibb*, this Court would have personal jurisdiction over GM with respect to the claims of non-resident, absent class members, in the event that a class were certified. Any such inquiry would be premature at this stage.");

- *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2019) ("Given the unsettled nature of the law following *Bristol-Myers*, the Court will defer on this question until the plaintiff brings a motion for class certification, if he chooses to do so.");

- *Gonzalez v. Costco Wholesale Corp.*, 2018 U.S. Dist. LEXIS 171000, 2018 WL 4783962, at *8 (E.D.N.Y. Sept. 29, 2018) ("[T]his court will defer its resolution of this issue until Plaintiff files a motion for class certification.") (citation omitted).

- Bank v. CreditGuard of Am., 2019 U.S. Dist. LEXIS 49363, *34-35, 2019 WL 1316966 (E.D.N.Y. March 22, 2019) ("Given 'the unsettled nature of the law following *Bristol-Meyers*,' the Court declines to consider whether to dismiss the TCPA class claim until a class certification is sought.")

- *Moser v. Benefytt, Inc.*, 8 F.4d 872, 877 (9th Cir.) ("The question here is whether, at the motion to dismiss stage, it was an "available" Rule 12(b) defense that the district court

lacked personal jurisdiction over unnamed, non-resident putative class members. The answer is no.")

In short, Defendants' request that the Court dismiss the class claims of non-New York plaintiffs runs contrary to precedent, and the Court should deny it.

## **<u>CONCLUSION</u>**

For all the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

Dated: May 9, 2022

Respectfully submitted,

By: _____*/s/ Rony Guldmann*_____
        Rony Guldmann, Esq.

**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com

*Attorneys for Plaintiff and the Class*